Mr. Justice SWAYNE
 

 delivered the opinion of the court, -and after stating the case, proceeded thus:
 

 The demurrer admits what is set forth in the answer. On the other hand, the answer, according to the law of pleading, admits what is alleged in the petition and not denied.
 

 It is then a part of the case before us, that when the bonds were issued and negotiated there were statutes of Illinois in
 
 *549
 
 force which authorized the levying of a sufficient special tax to pay the coupons in question as they became due. Such statutes are so inconsistent with the provisions of the act of 1863, relied upon by the city, and cover the same ground, in such a manner that the act of 1863 unquestionably rer. peals them, if that act be valid for the purposes it was intended to accomplish.
 

 The validity of the bonds and coupons is not denied. No question is made as to the judgment. The ease turns upon the validity of the statute restricting the power of taxation left to the city within the narrow limits which it p rescribes.
 

 The answer says expressly that fifty cents on the hundred dollars’ worth of property, which is all the statute allows to be levied to meet the debts and current expenses of the city, will not be sufficient for those purposes. The expenses will, of course, be first defrayed out of the fund. "What the deficiency will be as to the debts, or whether anything applicable to them will remain, is not stated. So far, it appears that nothing has been paid upon these liabilities. And it was not claimed at the argument that the result under the statute would be different in the future.
 

 The question to be determined is whether the statute, in this respect, is valid, or whether the legislature transcended its power in enacting it.
 

 The duty which the court is called upon to perform is always one of great delicacy, and the power which it brings into activity is only to be exercised in cases entirely free from doubt. .
 

 The Constitution of the United States declares (Art. I, § 10), that “no State shall pass any bill of attainder,
 
 ex post fctcto
 
 law, or law impairing the obligation of contracts.”
 

 The case of
 
 Fletcher
 
 v. Peck,
 
 *
 
 was the first one in this court in which this important provision came under consideration. It was held that it applied to all contracts, executed and executory, “whoever may be parties to them.” In that case the legislature of Georgia had repealed an act
 
 *550
 
 passed by a former legislature, under which the plaintiff in error had acquired his title by mesne conveyances from the State. The court pronounced the repealing act within the inhibition of the Constitution, and therefore void. Chief Justice Marshall said: “ The validity of this rescinding act might well be doubted were Georgia a single sovereign power; but Georgia cannot be viewed as a single, unconnected sovereign power, on whose legislature no other restrictions are imposed than may be found in its own constitution. She is a part of a large empire. . She is a member of the American Union, and that Union has a. Constitution, the supremacy of which all acknowledge, and which imposes limits to the legislatures of the several States which none claim a right to pass.” This case was followed by those of
 
 New Jersey
 
 v.
 
 Willson
 

 *
 

 and
 
 Terret
 
 v.
 
 Taylor.
 

 †
 
 The principles which they maintain are now axiomatic in American jui'is-prudence, and are no longer open to controversy.
 

 It is also settled that the laws which subsist at the time , and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its tei’ms. This principle embraces alike those which affect its validity, construction, discharge, and enforcement. Illustrations of this proposition are found, in the obligation of the debtor to pay interest after the maturity of the debt, where the contract is silent; in the liability of the drawer of a protested bill to pay exchange and damages, and in the right of the .drawer and indorser to require proof of demand and notice. These are as much incidents and conditions of the contract as if they rested upon the basis of a distinct agreement.
 
 ‡
 

 In
 
 Green
 
 v. Biddle, the subject of laws which affect the remedy was elaborately discussed. The controversy grew out of a compact between the States of Virginia and Kentucky. It was made in contemplation of the separation of
 
 *551
 
 the territory of the latter from the former, and its erection into a State, and is contained in an act of the legislature of Virginia, passed in 1789, whereby it was provided “ that all private rights and interests within” the District of Kentucky “derived from the laws of Virginia prior to such separation shall remain valid and secure under the laws of the proposed State, and shall be determined by the laws now existing in this State.” By two acts of the legislature of Kentucky, passed respectively in 1797 and 1812, several new provisions relating to the consequences of a recovery in the action of ejectment — all eminently beneficial to the defendant-, and onerous to the plaintiff — were adopted into the laws of that State. So far as they affected the lands covered by the compact, this court declared them void. It was said: “ It is no answer that the acts of Kentucky now in question are regulations of the remedy, and not of the right to the lands. If these acts so change the nature and extent of existing remedies as materially to impair the'rights and interests of the owner, they are j ust as much a violation of the compact as if they
 
 overturned
 
 his rights and interests.”
 

 In
 
 Bronson
 
 v. Kinzie,
 
 *
 
 the subject was again fully considered. A mortgage was executed in Illinois containing a power of sale. Subsequently, an act of the legislature was passed which required mortgaged premises to be sold for not less than two-thirds of their appraised value, and allowed the mortgagor a year after the sale to redeem. It was held that the statute, by thus changing the pre-existing remedies, impaired the obligation of the contract, and was therefore void.
 

 In
 
 McCracken
 
 v. Hayward,
 
 †
 
 the same principle, upon facts somewhat varied, was again sustained and applied. A statutory provision that personal property should not be sold under execution for less than two-thirds of its appraised value was adjudged, so far as it affected prior contracts, to be void, for the same reason.
 

 In
 
 Sturges
 
 v.
 
 Crowninshield,
 

 ‡
 

 the question related to a law
 
 *552
 
 discharging tbe contract. It was held that a State insolvent or bankrupt law was inoperative as to contracts which existed prior to its passage.
 

 In
 
 Ogden
 
 v.
 
 Saunders
 

 *
 

 the question was as to the effect of such a law upon a subsequent contract. It was adjudged to be valid, and a discharge of the contract according to its provisions was held to be conclusive.
 

 A statute of frauds embracing a pre-existing parol contract not before required to be in writing would affect its validity. A statute declaring that the word
 
 ton
 
 should thereafter be held, in prior as well as subsequent contracts, to mean half or double the weight before prescribed, would affect its construction. A statute providing that a previous contract of indebtment may be extinguished by a process of bankruptcy would involve its discharge, and a statute forbidding the sale of any of the debtor’s property, under a judgment upon such a contract, would relate to the remedy.
 

 It cannot be doubted, either upon principle or authority, that each of such laws passed by a State would impair the obligation of the contract, and the last-mentioned not less than the first. Nothing can be more material to the obligation than the means of enforcement. "Without the remedy the contract may, indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties which depend for their fulfilment wholly upon the will of the individual. The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed ‘by the Constitution against invasion. The obligation of a contract “ is the law which binds the parties to perform their agreement.”
 
 †
 
 The prohibition has no reference to the degree of impairment. The largest and least are alike forbidden. In
 
 Green
 
 v.
 
 Biddle,
 

 ‡
 

 it was said: “ The objection to a law on the ground of its impairing the obligation of a contract can never depend upon the extent of the change which the law effects in it.
 
 *553
 
 Any deviation from its terms by postponing or accelerating tbe period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with those which are, however minute or apparently immaterial in their effect upon the contract of the parties, impairs its obligation. Upon this principle it is that if a creditor agree with his debtor to postpone the day of payment, or in any other way to change the terms of the contract, without the consent of the surety, the latter is discharged, although the change was for his advantage.”
 

 “
 
 One of the tests that a contract has been impaired is that its value has, by legislation, been diminished. It is not, by the Constitution, to be impaired at all. This is not a question of degree or cause, but of encroaching, in any respect, on its obligation — dispensing with any part of its force.”
 
 *
 

 This has reference to legislation which affects the contract directly, and not incidentally or only by consequence.
 

 The right to imprison for debt is not a part of the-contract. It is regarded as penal rather than remedial. The States may abolish it whenever they think proper.
 
 †
 
 They may also exempt from sale, under execution, the necessary implements of agriculture, the tools of a mechanic, and articles of necessity in household furniture. It is said:
 
 “
 
 Regulations of this description have always been considered in every civilized community as properly belonging to the remedy, to be exercised by every sovereignty according to its own views of policy and humanity.”
 

 It is competent for the States to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which, under the form of mod
 
 *554
 
 ifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances. Whenever the result last mentioned is produced the act is within the prohibition of the Constitution, and to that extent void.
 
 *
 

 If these doctrines wrere
 
 res integra
 
 the consistency and soundness of the reasoning which maintains a distinction between the contract and the remedy — or, to speak more accurately, between the remedy and the other parts of the contract — might perhaps well be doubted-
 
 †
 
 But they rest in this court upon a foundation of authority too firm to be shaken; and they are supported by such au array of judicial names that it is hard for the mind not to feel constrained to believe they are correct. The doctrine upon the subject established by the latest adjudications of this coui't render the distinction one rather of form than substance.
 

 When the bonds in question were issued there were laws in force which authorized and required the collection, of taxes sufficient in amount to meet the interest, as it accrued from time to time, upon the entire debt. But for the act of the 14th of February, 1863, there would be no difficulty in enforcing them. The amount permitted to be collected by that act will be insufficient; and it is not certain that anything will be yielded applicable to that object. To the extent of the deficiency the obligation of the contract will be impaired, and if there be nothing applicable, it may be regarded as annulled. A right without a remedy is as if it were not. For every beneficial purpose it may be said not to exist.
 

 It is well settled that a State may disable itself by contract from exercising its taxing power in particular eases.
 
 ‡
 
 It is equally clear that where a State has authorized a municipal
 
 *555
 
 corporation to contract and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied. The State and the corporation, in such cases, are equally bound. The power given becomes a trust which the donor cannot annul, and which the donee is bound to execute; and neither the State nor the corporation can any more impair the obligation of the contract in this way than in any other.
 
 *
 

 The laws requiring taxes to the requisite amount to be • collected, in force when the bonds were issued, are still in force for all the purposes of this case. The act of 1863 is, so far as it affects these bonds, a nullity. It is the duty of the city to impose and collect the taxes in all respects as if that act had not been passed. A different result would leave nothing of the contract, but an abstract right — of no practical value — and render the protection of the Constitution a shadow" and a delusion.
 

 The Circuit Court erred in overruling the application for a
 
 mandamus.
 
 The judgment of that court is Reversed, and the caiise will be remanded, with instructions to proceed
 

 IN CONEORMITY WITH THIS OPINION.
 

 *
 

 6 Cranch, 87.
 

 *
 

 7 Cranch, 164.
 

 †
 

 9 Id. 43.
 

 ‡
 

 Green
 
 v.
 
 Biddle, 8 Wheaton, 92; Bronson
 
 v.
 
 Kinzie, 1 Howard, 319; McCracken
 
 v.
 
 Hayward, 2 Id. 612; People
 
 v.
 
 Bond, 10 California, 570; Ogden
 
 v.
 
 Saunders, 12 Wheaton, 231.
 

 *
 

 1 Howard, 297.
 

 †
 

 2 Id. 608.
 

 ‡
 

 4 Wheaton, 122.
 

 *
 

 12 Wheaton, 213.
 

 †
 

 Sturges
 
 v.
 
 Crowninshield, 12 Id. 257.
 

 ‡
 

 8 Id. 84.
 

 *
 

 Planters' Bank
 
 v.
 
 Sharp et al., 6 Howard, 327.
 

 †
 

 Beers
 
 v.
 
 Haughton, 9 Peters, 359; Ogden
 
 v.
 
 Saunders, 12 Wheaton, 230; Mason
 
 v.
 
 Haile, 12 Id. 373; Sturges
 
 v.
 
 Crowninshield, 4 Id. 200.
 

 *
 

 Bronson
 
 v.
 
 Kinzie, 1 Howard, 311; McCracken
 
 v.
 
 Hayward, 2 Id. 608.
 

 †
 

 1 Kent’s Commentaries, 456; Sedgwick on Stat. and Cons. Law, 652; Mr. Justice Washington's dissenting opinion in Mason
 
 v.
 
 Haile, 12 Wheaton, 379.
 

 ‡
 

 New Jersey
 
 v.
 
 Wilson, 7 Cranch, 166; Dodge
 
 v.
 
 Woolsey, 18 Howard, 331; Piqua Branch
 
 v.
 
 Knoop, 16 Id. 331.
 

 *
 

 People
 
 v.
 
 Bell, 10 California, 570; Dominic
 
 v.
 
 Sayre, 3 Sandford, 555.