MARY BARBOUR BLAIR *vs.* WILLIAM H. CLAFLIN, JUNIOR,
& others, trustees.

Suffolk.     April 10, 11, 1941. — October 31, 1941.

Present: DONAHUE, QUA, DOLAN, COX, & RONAN, JJ.

*Contract,* Implied. *Volunteer. Equity Jurisdiction,* Mistake, Unjust
enrichment, Payment by volunteer for benefit of another. *Subroga-
tion. Tax,* On income. *Trust,* Taxes.

A beneficiary of a trust, after receiving certain sums from the trustee and
paying Federal income taxes thereon in reliance on a statement by the
trustee that such sums should be included in the beneficiary's tax
returns, such payments being made during a period when the commis-
sioner of internal revenue deemed that the tax thereon should be paid
by the beneficiary and therefore would not have sought to compel
payment by the trustee, was not entitled in equity, either on the
ground of mutual mistake of the trustee and the beneficiary or of
unjust enrichment of the trust, to recover the amount so paid from
the trustee upon its being determined by decisions of the Federal
courts that trustees, not beneficiaries, should pay taxes on payments
of the character in question, although by the time when such decisions
were made it was too late either for the beneficiary to recover the
taxes thus paid from the government or for the government to recover
them from the trustee.

PETITION IN EQUITY, filed in the Probate Court for the
county of Suffolk on January 4, 1940.

The case was reserved and reported by *Dillon,* J.

*H. C. Thompson,* (*F. P. Hurley* with him,) for the peti-
tioner.

*C. C. Cabot,* (*R. D. Price* with him,) for the respondents.

Cox, J.   This is a petition brought in the Probate Court
to require the respondents, as trustees under the will of
Edmund Dana Barbour, to pay the amount of Federal in-
come taxes that the petitioner paid for several years based
upon the payment to her of a $20,000 annuity, and also
certain expenses that she paid in connection with her pro-
ceeding to recover from the Federal government a refund
for overpayment of taxes.  The trial judge reserved and
reported the matter upon the pleadings and a statement of

agreed facts for the determination of this court. G. L. (Ter. Ed.) c. 215, § 13. *Cobb* v. *Old Colony Trust Co.* 295 Mass. 338. By the terms of said will, as modified by a compromise agreement, a sum was set aside to constitute a trust fund, and "out of the income and accumulations of this trust or from the principal, if necessary," the trustees were required to pay to the petitioner a life annuity of $20,000, and upon her death the remaining principal of the trust and its accumulations were to be divided equally among three institutions of learning. For each of the years 1926 to 1933, inclusive, the trustees paid the annuity out of the income of the trust fund and filed Federal income tax fiduciary returns in which, pursuant to the regulations of the commissioner of internal revenue, they deducted the amounts paid to the petitioner, treating these payments as income distributed currently by the fiduciary to the beneficiary under § 219 (b) of the revenue act of 1926 (U. S. C. Sup. V, Title 26, § 162 [b]) and similar provisions of subsequent revenue acts; and at the conclusion of each of these years the trustees, through their agent, gave the petitioner a statement of the figures used by them in their fiduciary returns, which statement contained the following language: "The Federal Income Tax Regulations prescribe that a beneficiary of a trust or estate shall include in his individual income tax return the income collected by the fiduciary for his benefit during the calendar year. This may be greater or less than the actual amount received from the fiduciary owing to the agreed dates of remitting. Since the fiduciary must report to the Government the amount of income COLLECTED, the beneficiary should include in his personal return the same figures which the fiduciary uses in his information return." Pursuant to the above quoted statement, the petitioner included in her Federal income tax returns for the years 1926 to 1933, inclusive, the payments received by her from the trustees, and, as a result, she paid the Federal government greater income taxes than she would otherwise have had to pay.

In November, 1936, the trustees' agent informed the petitioner that there was a possibility, as a result of changes in

the construction of the income tax law, of her receiving a refund of the income taxes theretofore paid by her by reason of including in her personal returns the amounts received by her from the trustees, and suggested that she might wish to have it lay the matter before her tax counsel. The petitioner obtained from the Federal government a refund of such taxes paid by her for 1934 and 1935, and, in doing so, incurred certain expenses. Since 1934, the trustees, as a result of changes in the construction of the Federal income tax law, have paid the Federal income taxes applicable to the entire income of the trust fund. The income from the trust fund has always been adequate to pay the annuity provided for and all other charges and taxes.

It is not contended that the trustees, throughout the years in question, that is, 1926 to 1933, inclusive, were not legally obligated to pay the Federal income taxes on the income received by them as trustees and paid by them to the petitioner for her annuity, nor is it contended that the petitioner was, under the law, obliged to pay any income tax upon her annuity. See *Burnet* v. *Whitehouse*, 283 U. S. 148; *Helvering* v. *Pardee*, 290 U. S. 365, 370, 371; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Internal Revenue*, 66 Fed. (2d) 179, certiorari denied, 290 U. S. 700.

By § 1101 of the revenue act of 1926 (44 U. S. Sts. at Large, 111; U. S. C. Sup. V, Title 26, § 62) the commissioner of internal revenue, with the approval of the secretary of the treasury, was authorized to prescribe all needful rules and regulations for the enforcement of the act. Under this authority, he promulgated art. 341 of regulations 69, which, in part, provided: "Estates and trusts: — In general, the income of a trust for the taxable year which is to be distributed to the beneficiaries must be returned by and will be taxed to the respective beneficiaries, but the income of a trust which is to be accumulated or held for future distribution, whether consisting of ordinary income or gain from the sale of assets included in the corpus of the trust, must be returned by and will be taxed to the trustee . . . ." Regulations by a department of government, addressed to and reasonably adapted to an act of Congress, the adminis-

tration of which is confided to such department, have the force and effect of law if they be not in conflict with express statutory provision. *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, 349. *Helvering* v. *Jane Holding Corp.* 109 Fed. (2d) 933, 939, certiorari denied *sub nomine Jane Holding Corp.* v. *Helvering*, 310 U. S. 653.

The precise validity and effect of the above quoted regulation do not appear to have been definitely settled until the decisions on December 11, 1933, in the cases of *Helvering* v. *Pardee*, 290 U. S. 365, and *Boston Safe Deposit & Trust Co.* v. *Commissioner of Internal Revenue*, 66 Fed. (2d) 179; 290 U. S. 700. In the case of *Burnet* v. *Whitehouse*, 283 U. S. 148, decided in 1931, the commissioner of internal revenue had demanded of Mrs. Whitehouse income tax for the year 1921 on annuity payments to her. It was there held that the bequest to her was not one to be paid from income, but was a sum certain, payable at all events during each year so long as she should live, and that the payment was exempt from taxation. See also *Everett E. Kent*, 26 B. T. A. 482. At all events, the apparent contention of the commissioner, that an annuity was taxable to the beneficiary if it was to be paid in any event, and not solely from income, was finally overruled, and it was held that the trustees should not deduct such annuity payments in their returns as income distributed currently.

The petitioner's claim is for restitution of the taxes that should have been paid by the trustees, and she proceeds upon the ground of "mutual mistake on the part of persons who were in confidential relations with each other." She relies upon the cases of *Reggio* v. *Warren*, 207 Mass. 525, and *De Bearn* v. *Winans*, 111 Md. 434. During the years that the petitioner paid the taxes, for which she now claims restitution, the situation was somewhat unusual. The Federal government, through its regularly constituted representative, in cases where the facts were, in effect, the same as in the case at bar, was demanding payment of taxes, not from the trustees, but from the beneficiary who received an annuity from them. It would seem that the commis-

sioner of internal revenue contested each point as it arose under his interpretation of the pertinent section of the revenue act, and that, until the questions were definitely decided by the Supreme Court, he would make no effort to collect the tax upon an annuity from the trustees. If the tax during the years in question was the debt of the trustees, it was one that the creditor did not recognize, and, moreover, would make no attempt to collect as such. It seems that the petitioner is barred from recovering from the government taxes paid prior to 1934, and that the government is barred from recovering from the trustees any taxes that they should have paid before that date (see revenue act of February 26, 1926, c. 27, § 284 [44 U. S. Sts. at Large, 66], as amended by acts of May 10, 1934, c. 277, § 504 [c] [48 U. S. Sts. at Large, 756], May 29, 1928, c. 852, § 507 [45 U. S. Sts. at Large, 871], and May 28, 1938, c. 289, § 809 [d] [52 U. S. Sts. at Large, 576]), so that, in effect, the petitioner's contention is that she paid taxes that she did not need to pay and which she cannot now recover, that the trustees did not pay taxes that they should have paid, and which the government cannot now collect, and that in view of the statement hereinbefore quoted that the trustees gave the petitioner, the trustees should pay her what she herself paid.

We are of opinion that the petitioner's contention cannot be sustained. It seems apparent that the real mistake in the case was made by the commissioner of internal revenue in his construction of the pertinent sections of the revenue act as set forth in his regulation. It is true that the trustees passed on to the petitioner the substance of this regulation which was, so long as it stood, as binding upon them as it was upon her. It is true that pursuant to this statement the petitioner included in her Federal income tax returns the payments that she had received from the trustees, and, as a consequence, paid taxes that ought not to have been required of her. The question of what taxes the petitioner should pay was her personal concern. She was told in the statement of the trustees that the regulations, in effect, required her to include in her individual

income tax return the income collected by them for her benefit during the calendar year. She was not told that she should pay a tax on these amounts, and whether she should or not was a matter over which the trustees had neither control nor concern.

In relying upon the case of *Reggio* v. *Warren,* 207 Mass. 525, the petitioner makes the point that the trust fund has been unjustly enriched by her payment of the taxes which the trustees should have paid. It is difficult to see how the trust has been unjustly enriched. It seems apparent that the Federal government under no circumstances would have attempted to collect any taxes from the trustees on account of the annuity paid to the petitioner during the years in question. In other words, the trust has no more money in hand today because the petitioner paid the taxes than it would have had if she had not. It is a general rule that an intermeddler, by gratuitously paying the debt of another, does not create a legal obligation between himself and that other, *Newell* v. *Hadley,* 206 Mass. 335, 342–343, and cases cited, and the plaintiff in such a case, as a rule, stands no better in equity than at law. *Bartholomew* v. *Stobbs,* 280 Mass. 559, 562. In this last case it was said, at page 562: "This court, without excluding the possibility of other grounds for relief (see *Newell* v. *Hadley,* 206 Mass. 335, 342), has ordinarily based equitable relief where the plaintiff's money was paid by him or used for the benefit of a third person on the principle of subrogation of the plaintiff to the rights of the third person against the defendant. This principle, however, is inapplicable where the plaintiff, as here, is merely a volunteer." One of the "other grounds for relief" is where the "true owner of the money is allowed to trace his property into the benefit enuring to the defendant, on the principle on which an owner can in equity trace his property into any form into which it has been wrongfully converted." See *Newell* v. *Hadley, supra,* at page 342; *Taylor* v. *Jones,* 242 Mass. 210; *Downey Co.* v. *282 Beacon Street Trust,* 292 Mass. 175, 180; *Hill* v. *Wiley,* 295 Mass. 396, 400, and cases cited. But, as was pointed out in the *Bartholomew* case, at page 563, equitable

relief cannot be granted on this principle where no wrongful conversion is alleged.

If it be assumed that the petitioner did pay a debt of the trustees when she paid the taxes in question, there was no request on their part that she pay them, and, in fact, under the then state of the law, as interpreted by the commissioner, the trustees were under no obligation to pay any tax, so that it can hardly be said that there was any debt. The petitioner, at the time she paid the taxes, apparently had no idea that she was paying any debt of the trustees or that they should repay her. In the state of the law as then interpreted by the commissioner, placing the tax upon the petitioner, it cannot be said that the parties could even contemplate that the petitioner was paying the debt of the trustees. Accordingly, there could be no express request that she pay, and there are no circumstances upon which an implied request can be based, nor can it be said that the payments were subsequently ratified by the trustees. See *Holbrook* v. *Clapp*, 165 Mass. 563, 564; *Foote* v. *Cotting*, 195 Mass. 55, 60, 61; *Bartholomew* v. *Stobbs*, 280 Mass. 559, at page 561.

We are of opinion that the case at bar does not come within the principle stated in *Reggio* v. *Warren*, 207 Mass. 525. In addition to what has already been said, there was no such transaction here between the trustees and the cestui as in that case. Here, even if the petitioner had not paid the taxes, it seems clear that the commissioner would not have proceeded against the trustees. So far as they were concerned, it was immaterial whether she paid the taxes. It turns out that when it was finally decided that the trustees should have paid the taxes, it was then too late to require them to do so, so that even if it could be assumed that the petitioner was not a volunteer and would be subrogated to the rights of the Federal government, she would be without any effective remedy. It is unnecessary to consider other possible grounds upon which the two cases are distinguishable. We are also of the opinion that the case at bar is distinguishable from *De Bearn* v. *Winans*, 111 Md. 434. See 2 Scott on Trusts, § 226, Note 2.

It follows that a decree is to be entered dismissing the petition.

*Ordered accordingly.*