United States Fidelity & Guaranty Co. v. N. J. B. Prime Investors.

UNITED STATES FIDELITY AND GUARANTY COMPANY vs.
N. J. B. PRIME INVESTORS & others.[1]

Franklin. January 11, 1978. — June 28, 1978.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

Contract, Performance and breach, Implied contract. Volunteer. Sub-
rogation. Surety. Jurisdiction, Civil, Unjust enrichment.

Where the surety on a payment and performance bond made pay-
ments on behalf of the principal, even though it was not legally
obligated to do so by the terms of the bond, the surety was not
entitled to reimbursement by an obligee on the bond. [457–460]
In an action by a surety on a payment and performance bond against
a construction lender seeking reimbursement for monies voluntari-
ly advanced on behalf of the principal, a general contractor, there
was no merit to the surety's contention that it was entitled to be
subrogated to the borrower's rights under the construction loan
agreement. [460]
Where the surety on a payment and performance bond made pay-
ments on behalf of the principal, even though it was not legally
obligated to do so by the terms of the bond, the surety was not
entitled to reimbursement by an obligee on the ground of unjust
enrichment in the absence of conduct amounting to wrongful con-
version by the obligee. [460–461]

CIVIL ACTION commenced in the Superior Court on Au-
gust 29, 1975.

The case was heard by Lynch, J., on a motion to dismiss.

Vincent Galvin (Jerold Newirth with him) for the plain-
tiff.

Irvin D. Gordon for N. J. B. Prime Investors.

---

[1] United States Trust Company of New York and New England
Merchants Bank, alleged to be assignees of the defendant N. J. B.
Prime Investors.

KEVILLE, J. By this action the plaintiff, the surety on a payment and performance bond, seeks reimbursement from the defendant N. J. B. Prime Investors (Investors) for monies allegedly advanced under the bond. Investors filed a motion to dismiss on the grounds that the plaintiff's complaint failed to state a claim upon which relief could be granted (Mass.R.Civ.P. 12[b][6], 365 Mass. 755 [1974]) and that the plaintiff failed to join necessary parties (Mass.R.Civ.P. 12[b][7], 365 Mass. 755 [1974]). The trial judge allowed the motion on both grounds. Since he had before him at the hearing on the motion (and did not exclude) an affidavit of one Krause filed on behalf of Investors, we assume that he treated the rule 12(b)(6) portion of the motion as a motion for summary judgment under Mass.R.Civ.P. 56, 365 Mass. 824 (1974).[2] See the second to last sentence of Mass.R.Civ.P. 12(b), 365 Mass. 755-756 (1974), and the ninth paragraph of the Reporters' Notes to that rule. The plaintiff appeals from the judgment entered following the allowance of the motion.

The pleadings and affidavit[3] disclose the following undisputed facts. Investors agreed to lend Deerfield Acres, Inc. (Deerfield), the owner of certain real estate in Deerfield (locus), $2,250,000 for the construction of a motel; these funds were to be disbursed periodically during the construction. As security for the loan Deerfield gave Investors a mortgage on the locus. Deerfield engaged R. E. Bean Construction Co., Inc. (Bean), as general contractor. Pursuant to the construction contract Bean obtained from the plaintiff a bond under which the plaintiff effectively promised to satisfy the claims of suppliers of material and labor whom Bean might fail to pay. Deer-

[2] No question has been raised as to the adequacy of notice that the judge would so treat the rule 12(b)(6) portion of the motion. *Capodilupo* v. *Petringa*, 5 Mass. App. Ct. 893, 894–895 (1977).

[3] Since the plaintiff has not controverted the allegations contained in the Krause affidavit by the filing of an opposing affidavit, we must accept as true the allegations of the Krause affidavit. Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974).

field was named as obligee in the bond. Later by virtue of a rider Investors became an additional obligee.

Investors disbursed to Deerfield slightly more than $2,000,000 under the loan agreement. But following Deerfield's failure to complete construction of the motel within eighteen months as required by the construction loan agreement, its failure to make an interest payment when due, and the recording by a subcontractor of a notice of contract (G. L. c. 254, § 4), Investors, acting in accordance with sections 5,[4] 6,[5] and 8[6] of the loan agreement, refused to disburse the remaining loan proceeds. Deerfield fell in arrears in its payments to Bean for work performed under the construction contract; as a result, Bean was unable to make payments to certain suppliers of material and labor. At the request of Bean, and in claimed reliance on Investors' obligations under the loan agreement, the plaintiff made payments to these suppliers in order to maintain the progress of the construction. Investors has not resumed disbursements of the loan proceeds, and either it or its assignees (see note 1, *supra*) have begun foreclosure proceedings on the mortgage.

1. The plaintiff contends that it has alleged sufficient facts to prove a contractual right to reimbursement from Investors for the payments it made at Bean's request to certain suppliers of labor and material. The plaintiff relies on language contained in the rider adding Investors

---

[4] Section 5, as pertinent, provides, "After the initial disbursements, disbursements will be made thereafter subject to compliance with conditions precedent herein contained."

[5] Section 6, as pertinent, provides, "It is understood and agreed that lender shall not advance any funds if a continuance run down of the title discloses any recorded notices of contract ... until such notices ... have been discharged of record."

[6] Section 8, as pertinent, provides, "Breach by borrowers, of any of the terms, covenants, undertakings, representations, conditions or obligations hereof ... shall constitute a default by borrowers hereunder, and whenever such default occurs, lender may declare all advances, if any, paid previously thereto, together with accrued interest to be immediately due and payable."

as an obligee and set forth in the margin.[7] The plaintiff's reliance is misplaced.

We begin by observing that this is not a case in which the plaintiff as surety "arrange[d] for completion of the Contract upon default of the Principal [Bean]." Bean did not default on the construction contract; Deerfield did. Therefore, the plaintiff's contractual right to reimbursement, if any, must rest on the provision that "there shall be no liability on the part of the ... Surety under this bond to the Obligees, or either of them, unless the Obligees, or either of them, shall make payments to the Principal ... strictly in accordance with the terms of said Contract as to payments." That language must be construed in light of the circumstances under which the rider to the bond was executed (*Louis Stoico, Inc.* v. *Colonial Dev. Corp.*, 369 Mass. 898, 902 [1976]; *Dickson* v. *Riverside Iron Works, Inc., ante* 53, 55 [1978]) and, in particular, the terms of the original bond, the construction contract and the construction loan agreement. See *Kelley* v. *Ryder*, 276 Mass. 24, 27 (1931), and *Roger Williams Grocery Co.* v. *Sykes*, 357 Mass. 485, 488–489 (1970), and case cited.

We interpret the language solely as an attempt to provide for the discharge of the plaintiff's liability upon the bond in the event Deerfield should fail to pay Bean as required by the construction contract and, upon that failure, Investors should fail to step in to make the payments due Bean.[8] We see nothing in the language obligating

---

[7] "PROVIDED, HOWEVER, that notwithstanding anything contained herein to the contrary, there shall be no liability on the part of the Principal or Surety under this bond to the Obligees, or either of them, unless the Obligees, or either of them, shall make payments to the Principal, or to the Surety in case it arranges for completion of the Contract upon default of the Principal, strictly in accordance with the terms of said Contract as to payments, and shall perform all the other obligations required to be performed under said Contract at the time and in the manner therein set forth."

[8] Neither the plaintiff nor Investors has questioned the effectiveness of that language to achieve such a discharge in the event a claimant

6 Mass. App. Ct. 455                                      459

United States Fidelity & Guaranty Co. *v.* N. J. B. Prime Investors.

Investors so to step in. Such an obligation would have the effect of requiring Investors to continue disbursements of the loan proceeds (although directly to Bean rather than to Deerfield) even when, as here, Deerfield was in default on the construction loan agreement. Had the parties intended to provide in the rider for such an obligation, so obviously inconsistent with sections 5 and 6 of the construction loan agreement (see notes 4 and 5, *supra*), we believe that they would have used more explicit language. *Bancroft* v. *Abbott*, 3 Allen 524, 527–528 (1862). The case of *Travelers Indem. Co.* v. *First Natl. State Bank*, 328 F. Supp. 208 (D.N.J. 1971), relied on by the plaintiff, involved contractual agreements among the parties very different from those in the present case together with various Federal statutes and regulations. *Id.* at 212–214, 216–217.

Since, as the plaintiff itself alleges in its complaint, Deerfield had not made payments to Bean (the principal) "strictly in accordance with the terms" of the construction contract and Investors had not stepped in to make the payments due Bean, it follows from what we have already said that the plaintiff was not legally obligated by the terms of the bond to make the payments for which it now seeks reimbursement (but see note 8, *supra*). The plaintiff's payments having been voluntary, they could not create either an express or implied contract obligating Investors to reimburse the plaintiff even if it is assumed that those payments were made on behalf of Investors. *Bancroft* v. *Abbott*, 3 Allen at 525–527. *Blake* v. *Traders Natl. Bank*, 149 Mass. 250, 252 (1889). 10 Williston, Contracts § 1282 (3d ed. 1967). See *Foote* v. *Cotting*, 195 Mass. 55, 61 (1907); *Newell* v. *Hadley*, 206 Mass. 335, 342–343 (1910); *Bartholomew* v. *Stobbs*, 280 Mass. 559,

---

should sue on the bond. We, therefore, assume for the purposes of this opinion, without deciding, that it was. See *Fuller* v. *Dupont*, 183 Mass. 596, 598 (1903), *First Natl. Ins. Co. of America* v. *Lynn*, 525 F.2d 1, 2–3 (1st Cir. 1975), and 10 Williston, Contracts §§ 1244, 1245 (3d ed. 1967).

561–562 (1932); *Keljikian* v. *Star Brewing Co.*, 303 Mass,
53, 54 (1939); *Blair* v. *Claflin*, 310 Mass. 186, 191 (1941);
*Gough* v. *Gough*, 329 Mass. 634, 636 (1953). It is immaterial whether the plaintiff made the payments under a mistake or misapprehension as to its liability on the bond.
*Bancroft* v. *Abbott*, 3 Allen at 526. *Whiting* v. *Aldrich*, 117
Mass. 582, 584 (1875).

2. The plaintiff also seeks reimbursement from Investors on equitable grounds.

a. There is no merit to the plaintiff's contention that it
alleged in its complaint sufficient facts to indicate that it
was entitled to be subrogated to Deerfield's rights under
the construction loan agreement. See *Canter* v. *Schlager*,
358 Mass. 789, 794 (1971). A volunteer has no rights of
subrogation. *Newell* v. *Hadley*, 206 Mass. at 343. *Bartholomew* v. *Stobbs*, *supra* at 562. *MacAleese's Case*, 308
Mass. 513, 516 (1941). *Blair* v. *Claflin*, 310 Mass. at 191.
In any event, "[t]he party subrogated acquires no greater
rights than those of the party for whom he is substituted"
(*Jackson Co.* v. *Boylston Mut. Ins. Co.*, 139 Mass. 508, 510
[1885]; *Boston & Me. R.R.* v. *Hartford Fire Ins. Co.,* 252
Mass. 432, 436 [1925]; *Home Owners' Loan Corp.* v. *Baker*,
299 Mass. 158, 162 [1937]; see *Harvard Trust Co.* v. *Racheotes*, 337 Mass. 73, 75 [1958]), and Deerfield, being in
default on the construction loan agreement, had no right
to the undisbursed loan proceeds. The cases of *Prairie
State Natl. Bank* v. *United States*, 164 U.S. 227 (1896),
*Henningsen* v. *United States Fid. & Guar. Co.*, 208 U.S.
404 (1908), and *Pearlman* v. *Reliance Ins. Co.*, 371 U.S.
132 (1962), are of no assistance to the plaintiff as they
involve a surety's right to be subrogated to an owner's
interest in a fund which the contract allowed the owner
to retain pending completion of performance of that contract.

b. Finally, the plaintiff, relying on the fact that the
continued construction on the locus made possible by its
payments increased the value of the property subject to
Investors' mortgage, asserts that it has alleged sufficient

facts to raise an issue as to whether it is entitled to be reimbursed on the ground of unjust enrichment. We disagree. When, as here, the plaintiff acts as a volunteer, it cannot recover on the ground of unjust enrichment unless it alleges facts amounting to a wrongful conversion by the defendant. This the plaintiff has not done. *Bartholomew* v. *Stobbs*, 280 Mass. at 563. *Blair* v. *Claflin*, 310 Mass. at 191–192. See *Newell* v. *Hadley*, 206 Mass. at 342.

3. Having concluded that there was no error in the allowance of the motion to dismiss on the first ground alleged, we need not consider the second.

*Judgment affirmed.*