**BERKS PRODUCTS CORPORATION, Chelten Manufacturing Company, D.B. Diefenderfer and Brother, Inc., Eastern Energy Savers, Inc. (formerly known as Eastern Industrial Insulation Company, Inc.), Esterly Contracting Company, Inc., D.S. Gitto Lathing/Plastering/Stucco Contractors, Harvey B. Good, Randy Kurtz Landscaping, Kurtz Brothers Concrete, Inc., Kurtz Precast Corporation, Manpower Inc. of Reading, Modernfold of Reading, Inc., J.C. McGinn Construction Company, Peerless Products, Inc., Scheler and Shifflet, D.E. Stoltzfus Construction Company, Thoro System Waterproofing, Inc., and Windsor Service, Inc.**

v.

**Moon LANDREAU, Secretary Department of Housing and Urban Development, Banco Mortgage Company, Donald Barsky, Melvin B. Miller, Resab and Vantage/Barsky, a Joint Venture, Paul Restall, Revere House Associates—Phase I, Title Services, Inc., and Vantage Development Corporation.**

Civ. A. No. 80–3214.

United States District Court,
E. D. Pennsylvania.

Sept. 24, 1981.

Carl S. Tannenbaum, Philadelphia, Pa., for plaintiffs.

Miles H. Shore, Philadelphia, Pa., for Paul Restall.

Gary Tilles, Asst. U.S. Atty., Philadelphia, Pa., for Moon Landreau, Secretary of Dept. of Housing and Urban Development.

Gerald P. Sigal, Reading, Pa., Jerome Lipman, Philadelphia, Pa., for Donald Barsky, Vantage/Barsky, Revere House Associates—Phase I and Vantage Development Corp.

Neil L. Albert, Lancaster, Pa., for Title Services, Inc.

A. H. Wilcox, Philadelphia, Pa., for Banco Mortgage Co.

## MEMORANDUM

CAHN, District Judge.

This action involves claims by subcontractors for payment for labor and materials supplied during the construction of a multi-family apartment complex in Berks County, Pennsylvania, which was developed as a low and moderate income housing project under § 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715*l*(d)(4). Before me are motions to dismiss on behalf of certain defendants including: (i) the Secretary of the Department of Housing and Urban Development

("HUD"), (ii) Donald Barsky, Vantage Development Corporation ("Vantage"), Revere House Associates-Phase I ("Revere House"), and the Joint Venture ("Joint Venture") composed of Resab, Inc. and Vantage/Barsky, and (iii) Paul Restall, who plaintiffs allege is the president and sole shareholder of Resab, Inc.

For the reasons stated herein, I will deny HUD's motion to dismiss under Fed.R. Civ.P. 12(b)(1) for claims arising under the National Housing Act for which jurisdiction is alleged under 28 U.S.C. § 1331 and § 1337, but will grant its motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to allege facts justifying relief under the National Housing Act. I will also reject plaintiffs' argument that their contract claims arise under the National Housing Act or federal common law. I hold, however, that plaintiffs have stated a claim against HUD in contract, which claim is governed by state law. Because plaintiffs' amended complaint eliminated the Tucker Act, 28 U.S.C. § 1346, as a basis for jurisdiction, I will dismiss plaintiffs' contract claims against HUD. Upon an appropriate motion, however, I will grant plaintiffs leave to reinstate their contract claims against HUD provided they amend their complaint to assert jurisdiction under § 1346 for claims of less than $10,000.

I will grant the private defendants' motions to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Lack of a substantial federal claim makes pendent jurisdiction inappropriate here. Finally, although defendants Banco Mortgage Company and Title Services, Inc. and Melvin Miller have not moved to dismiss plaintiffs' claim, I will dismiss plaintiffs' claim against these three defendants *sua sponte* for lack of subject matter jurisdiction, there being no federal question or complete diversity of citizenship in this case.

The dismissal under Fed.R.Civ.P. 12(b)(6) of plaintiffs' claims against HUD arising under the National Housing Act will be with prejudice. All other dismissals will be without prejudice.

## I. THE PARTIES

Plaintiffs are a group of eighteen subcontractors who claim that they have not been paid for labor and materials they allegedly supplied to the project. Plaintiffs are corporations and individuals that appear to be citizens of the Commonwealth of Pennsylvania.

Defendant Revere House owns the project. Revere House is a limited partnership with two general partners, Vantage and Barsky, and twenty-one limited partners. Defendant Melvin Miller is the escrow agent of the subscription funds of the limited partners of Revere House. Defendant Barsky is the president and chief operating officer of Vantage. Barsky and Melvin Miller are both citizens of Pennsylvania. Vantage is a corporation organized under the laws of Delaware, with its principal place of business in Pennsylvania. The amended complaint does not allege the citizenship of the limited partners of Revere House.

The prime contractor of the project was a joint venture composed of Resab, Inc., now insolvent, and defendants Vantage and Barsky. Paul Restall is alleged to be the president and sole shareholder of Resab, Inc. Banco Mortgage Company, an Iowa corporation with its principal place of business in Minnesota, is the construction lender and mortgagee. Defendant Title Services, Inc. ("Title") was the disbursing agent of the construction loan proceeds. The complaint does not allege Title's state of incorporation, but states that its principal place of business is in Minnesota. Defendant HUD insured the mortgage under the National Housing Act. In this connection HUD investigated the economic viability of the project. Many of the agreements between parties other than plaintiffs hereto were in the form mandated by the Act and the rules and regulations promulgated under it. 12 U.S.C. § 1715*l*.

## II. FACTS

I assume all facts pleaded by plaintiffs to be true for the purposes of these motions.

The defendants contemplated that the project would be financed by a mortgage insured by HUD under § 221(d) of the National Housing Act. The Joint Venture was formed to be the general contractor in order to provide the identity of interest between owner and contractor which allowed the parties to forego posting a surety bond for the completion of the project. The various defendants executed a number of agreements among themselves, many in forms prescribed by HUD, including a construction contract between Revere House and the Joint Venture; a building loan agreement setting forth terms and conditions for the mortgagee's advancement of construction funds; a regulatory agreement for multifamily housing projects between Revere House and HUD; a completion assurance agreement approved by HUD between Revere House, the Joint Venture and Banco; and a construction loan disbursement agreement between Revere House, the Joint Venture, Banco and Title.

During the course of the construction of the project HUD was required to monitor the construction and the financial arrangements pursuant to its obligations under the Act and regulations. HUD was required to approve progress payments under the building loan agreement.

When Resab, Inc. began to fail in its obligations, Revere House became the contractor. HUD had the power under 24 C.F.R. § 221.513 to withhold final endorsement of the building loan to secure payment to subcontractors, but did not exercise this power. Plaintiffs allege that HUD failed to do this despite the fact that it knew there were outstanding claims by plaintiff subcontractors. It is for this reason that HUD required the defendants to set up an escrow account pursuant to the escrow agreement concerning completion assurance funds. The agreement gave HUD power to control the escrowed funds.

Plaintiffs allege that the funds required by the escrow agreement were never set up. Plaintiffs do not allege that HUD now has or controls any such escrow funds.

## III. DISCUSSION

The complaint consists of twenty-nine counts. The first fourteen counts are against HUD alone or together with other defendants and charge violations of the National Housing Act, breach of contract, breach of duties under the National Housing Act and breach of fiduciary duties. All but count three of the first fourteen counts refer to a breach of a fiduciary duty created either by the National Housing Act or by the contract. Only count three speaks directly of breach of contract. Various other counts charge the private defendants with breach of contract and unjust enrichment. Plaintiffs seek equitable and monetary relief for all of the defendants.

■ Plaintiffs claim subject matter jurisdiction exists for their claims against HUD under 12 U.S.C. § 1702, 28 U.S.C. § 1331(a), and 28 U.S.C. § 1337.[1] Although plaintiffs pleaded Tucker Act jurisdiction over breach of contract claims against HUD in their original complaint, the amended complaint eliminated allegations of jurisdiction under 28 U.S.C. § 1346. Plaintiffs plead jurisdiction on the claims against the private defendants under §§ 1331, 1337 and would have this court invoke pendent jurisdiction to consider those claims in the event the court decides they do not arise under National Housing Act or federal common law.

### A. PLAINTIFFS' CLAIMS AGAINST HUD DISMISSED

### 1. NO JURISDICTION UNDER NATIONAL HOUSING ACT

■ The National Housing Act carries no independent grant of subject matter juris-

---

1. Although plaintiffs' amended complaint does not plead § 1337 jurisdiction, the court has inherent power to sustain jurisdiction under any statute which properly confers it. *Mobile Mechanical Contractors Assn. v. Carlough*, 456 F.Supp. 310, 328 (S.D.Ala.1978). Plaintiffs asked the court at oral argument and in their answers to the motions to dismiss to take jurisdiction under this provision. Therefore, I will consider § 1337 as a possible basis for jurisdiction.

diction. 12 U.S.C. § 1702 states, in relevant part:

The Secretary [of HUD] shall, in carrying out the provisions of . . . [the National Housing Act], be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.

A number of courts have held that this "sue and be sued" clause is not an independent jurisdictional grant. *Bor-Son Building Corp. v. Heller*, 572 F.2d 174 (8th Cir. 1978); *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974); *Ames-Ennis, Inc. v. Midlothian Ltd. Partnership*, 469 F.Supp. 939 (D.Md.1979); *Ghent v. Lynn*, 392 F.Supp. 879 (D.Conn. 1975). Therefore, plaintiffs must meet the requirements of another jurisdictional provision in order for this court to entertain its suit.

## 2. COURT HAS LIMITED SUBJECT MATTER JURISDICTION UNDER § 1331(a) and § 1337

Stated simply, this is a case of dissatisfied subcontractors seeking compensation for work performed. The facts alleged make it clear that plaintiffs' primary complaint is contractual or quasi-contractual in nature, and is most appropriately directed against the private defendants with whom they had contractual relationships. Plaintiffs have attempted to argue that HUD breached a duty to the plaintiffs. Such duty is alleged to arise under the National Housing Act, which is an act affecting commerce within the meaning of § 1337, and under contracts with parties other than the plaintiffs to which HUD was also a party.

### a. § 1331/§ 1337 JURISDICTION EXISTS FOR CLAIM OF DUTY UNDER NATIONAL HOUSING ACT

■ I hold that whether or not the National Housing Act gives rise to any duty by HUD to plaintiff subcontractors is an important federal question over which I take jurisdiction. This is precisely the question I

believe counsel for HUD was referring to when he commented in his letter of December 22, 1980, that plaintiffs' complaint alleges a "cause of action raising issues of great concern to the Secretary and to the counsel of the Department."

### b. NO § 1331/§ 1337 JURISDICTION FOR DUTIES ARISING UNDER CONTRACTS TO WHICH HUD WAS A PARTY [2]

■ Although plaintiffs take care to characterize their claims under contracts between HUD and other defendants or between defendants on forms prescribed by HUD as based on theories of fiduciary duties springing from the contracts, it is clear that these claims are contract claims. Whether the plaintiffs have a right to enforce these contracts as third-party beneficiaries is a contract claim pure and simple and is not a federal question and does not implicate the National Housing Act. *Lindy v. Lynn*, 501 F.2d 1367 (3d Cir. 1974). *But see* cases cited in footnote 6 *infra*.

■ Moreover, I also reject plaintiffs' claim that any alleged contractual duties arise under federal common law and that this satisfies § 1331 jurisdictional requirements. Federal common law is invoked when a policy underlying a federal statute requires uniform administration of the type of claim at issue. On the facts as currently pleaded by plaintiffs, the contract most likely giving rise to a duty by HUD to plaintiffs is the completion assurance contract creating the escrowed funds. No federal policy requires the uniform administration of this kind of escrow contract which is frequently used in standard construction arrangements and which is customarily interpreted by state courts. *Lindy v. Lynn*, 501 F.2d at 1369. Therefore, the contract claims do not arise under federal common law.

---

**2.** I hold that the tests for what "arises under" a given statute are identical for the purposes of determining federal question jurisdiction under § 1331(a) and § 1337. *Yancoskie v. Delaware River Port Auth.*, 528 F.2d 722, 725 (3d Cir.

1975); *Penn State Constr. Co. v. Associated-East Mortgage Co.*, 457 F.Supp. 396 (W.D.Pa. 1978); *Molton, Allen & Williams, Inc. v. Harris*, 436 F.Supp. 853, 857 n.3 (D.D.C.1977).

In sum, I have jurisdiction under § 1331 and § 1337 limited to consideration of whether the National Housing Act and the regulations promulgated thereunder give rise to any duty by HUD to the plaintiffs. Duties based purely on contracts arise neither under the National Housing Act nor under federal common law.[3]

### 3. PLAINTIFFS' CLAIMS THAT HUD BREACHED A FIDUCIARY DUTY TO THEM DISMISSED ON MERITS FOR FAILURE TO STATE CLAIM

■ Assuming: (i) that the National Housing Act and regulations adopted thereunder imposed affirmative duties upon HUD to supervise and complete the project; (ii) that HUD required the establishment of an escrow fund pursuant to an agreement which HUD itself signed when it discovered that the owner could not provide the certification, as required by the regulations, that there would be no outstanding obligations regarding construction; (iii) that HUD nevertheless failed to enforce the terms of the escrow agreement; (iv) that the escrow agreement was created pursuant to authority granted HUD by the regulations; (v) that plaintiffs relied upon HUD's representations and course of conduct which plaintiffs felt indicated that HUD would protect plaintiffs' interests—plaintiffs still have not shown and are unable to show that HUD had any duty to them created by the National Housing Act.

■ Congress intended the National Housing Act to benefit the public and the occupants of the residential units built under the Act. The procedures required by 12 U.S.C. § 1715*l*(d) are designed for the protection of HUD's insurance fund. HUD's primary responsibility is to protect the rights of homeowners. H.R. (Conf.) Rep. No.2271, 83d Cong., 2d Sess. 66–67, reprinted in [1954] U.S.Code Cong. & Ad.News 2723, 2828. The National Housing Act does not mention any duties owed by HUD to contractors or subcontractors. This is also reflected in the regulations. The regulations make clear that under these provisions HUD is to provide insurance for private lenders, not to make loans or build houses. 24 C.F.R. § 200.5. Regulations under the relevant sections of the National Housing Act refer only to rights and obligations to the mortgagee and not to builders or subcontractors. 24 C.F.R. §§ 221.251 to 325. At least one court has held that, under the National Housing Act, HUD assumes no obligation to any party except the mortgagee. *Marcus Garvey Square v. Winston Burnett Const.*, 595 F.2d 1126 (9th Cir. 1979); *See DSI Corp. v. Secretary of HUD*, 594 F.2d 177 (9th Cir. 1979). The purpose of the Act is to promote financing by private lenders of designated types of housing projects.[4] I therefore hold that the Nation-

---

**3.** To the extent that courts in other circuits have held that this type of contract claim is cognizable under § 1331(a), I respectfully disagree. *See* footnote 6 *infra.*

**4.** Congress, when enacting the original National Housing Act in 1934, mentioned providing employment and stimulating industry as incidental goals of the Act. H.R.Rep.No.1922, 73d Cong., 2d Sess. (1934); H.R. (Conf.) Rep.No. 2066, 73d Cong., 2d Sess. (1934). This arguably suggested a Congressional intent to benefit members of the building trades, an understandable goal during the depression years. My review of the 1934 legislative history does not lead one to believe that this was a major goal.

Regarding the original 1934 Act (48 Stat. 1246), Senator Barkley stated: "This [bill] will operate somewhat in the fashion of priming the pump, to get private capital reinvested in mortgage loans. Because of the insurance features and guaranty features, men who lend money on real estate will feel freer and safer in investing money in mortgage loans than they feel they are now." 78 Cong.Rec. 11981 (1934).

Moreover, whatever interest in helping building tradesmen existed in 1934 had disappeared by the time of the major revisions of 1954. The 1954 legislative history nowhere mentions building trades as intended beneficiaries of the Act. S.Rep.No.1472, 83d Cong., 2d Sess. (1954); H.R.Rep.No.1429, 83d Cong., 2d Sess. (1954). The concerns which motivated the 1954 revisions were abuses by builders under the 1934 Act. To curb the abuses, Congress decided to tighten builders' cost certification requirements. S.Rep.No.1472, 83d Cong., 2d Sess. 21–23 (1954). Therefore, the legislators' only express intention by 1954 with respect to members of the building trades, such as plaintiffs here, was to make certain they did not abuse the program.

al Housing Act imposes no fiduciary duty by HUD to plaintiff subcontractors.[5]

I therefore will dismiss with prejudice the following counts of plaintiffs' complaint as to HUD: counts one, four, six, eight, ten and twelve, which expressly allege violation of a duty by HUD to plaintiffs under the National Housing Act or federal common law; counts five, seven, nine, eleven, thirteen and fourteen, which allege breach of an unspecified fiduciary duty which is nonexistent to the extent it is alleged to arise under the National Housing Act; and counts two and three to the extent that these ambiguously drafted counts are intended to claim a breach of a duty by HUD to plaintiffs that arose under the National Housing Act or federal common law.

### 4. CONTRACT CLAIMS AGAINST HUD COGNIZABLE UNDER § 1346 ONLY

 As stated it is conceivable that plaintiffs have a claim against HUD for improper administration of the completion assurance contract which created an escrow fund to assure payment to plaintiff subcontractors. However, as stated above, the question of whether plaintiffs are third-party beneficiaries under this and other similar contracts is strictly a contract question and does not arise under either the National Housing Act or federal common law. This means that the only proper basis of jurisdiction for this claim is 28 U.S.C. § 1346. Despite plaintiffs' withdrawal from their amended complaint of § 1346 as a ground for jurisdiction, I will, upon an appropriate motion, grant plaintiffs who have claims under $10,000 leave to amend to plead § 1346 jurisdiction. Plaintiffs who have claims over $10,000 may either decrease the amount of their claims or may take their claims against HUD under these contracts to the Court of Claims. Therefore, as to counts two and three of plaintiffs' complaint as to HUD, I will dismiss without prejudice.[6]

**5.** The reverse side of the question of whether Congress intended to create a duty on the part of HUD to subcontractors is the issue of whether these subcontractors have standing to complain of HUD's breach of obligations under the National Housing Act. Standing has two parts. First, plaintiffs must show injury in fact and second, plaintiffs must show that they are " 'arguably within the zone of interests to be protected or regulated' by the statutes that the agencies were claimed to have violated." *Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972), *quoting Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970). The United States Court of Appeals for the Third Circuit held that low income families had standing to challenge HUD's violation of its governing regulations. The court of appeals stated that the interest of low income families in obtaining decent housing is among the interests protected by the National Housing Act. *Davis v. Romney*, 490 F.2d 1360 (3d Cir. 1974). *See* S.Rep. No.1472, 83d Cong., 2d Sess., 25–26, *reprinted in* [1954] U.S.Code Cong. & Ad.News 2723, 2757–58. The instant plaintiffs are not within the class of parties the National Housing Act was intended to protect. Therefore, an alternative ground for dismissing plaintiffs' claims against HUD based on HUD's breach of obligations under the National Housing Act would be plaintiffs' lack of standing.

A third method of analysis yielding the same result is whether to imply a private right of action in subcontractors under the National Housing Act. One of the factors involved in the *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), test is whether each of the plaintiffs is "one of the class for whose *especial* benefit the statute was enacted." For the reasons stated above, I hold that they are not.

Finally, many courts discuss this problem in terms of the intended scope of the 12 U.S.C. § 1702 waiver of sovereign immunity clause. *See Marcus Garvey Square v. Winston Burnett Const.*, 595 F.2d at 1132.

Each of these modes of analysis turns on the same question of Congressional intent. I chose to bypass these preliminary obstacles to subject matter jurisdiction by my holding that subject matter jurisdiction exists to consider the question of whether these are proper plaintiffs.

**6.** Plaintiffs alluded to an unjust enrichment theory of recovery against HUD in their amended complaint. However, it is difficult to understand how HUD could possibly be unjustly enriched. HUD has not assumed the rights and duties of the mortgagee here, and completed construction will not inure to its direct benefit because it has no lien on the property. HUD ideally would have caused a satisfactory project to be built with no expenditure of funds on its part other than whatever was necessary to commit to insure the mortgage. It got less here, not more.

## 5. CONCLUSION

In sum, I hold there are no meritorious federal claims or federal questions raised here. The National Housing Act imposes no duty by HUD to plaintiffs. Although HUD is not in privity of contract with any of the plaintiffs here, it is possible that plaintiffs might make out a contract claim against HUD on a third-party beneficiary theory. Federal common law is not required to interpret any of HUD's contracts with others which may affect plaintiffs' rights and questions of interpretation of these contracts do not "arise under" federal law. Therefore, plaintiffs may remain in this court to litigate this contract theory only to the extent they satisfy the jurisdictional requirements of the Tucker Act.

## B. CLAIMS AGAINST PRIVATE DEFENDANTS DISMISSED

## 1. PLAINTIFFS PLEAD JURISDICTION AGAINST THE OWNER–

Moreover where, as here, HUD is not in privity of contract with any of the plaintiffs, several solvent defendants with direct contractual liability to plaintiffs exist and plaintiffs have a contractual remedy for violations of any bona fide duty of HUD to them, the necessity of going against HUD under a quasi-contractual theory is obviated.

It is ridiculous to talk about constructive contracts when there are actual contracts present which will form the basis of suit. Therefore plaintiffs were not hurt by their failure to plead their unmeritorious unjust enrichment claims. *United States Steel Corp. v. United States*, 536 F.2d 921 (Ct.Cl.1976). A court sitting in equity could certainly take this lack of prejudice into account.

The opinions of the Courts of Appeals for the District of Columbia, Second and Fifth Circuits of which plaintiffs make so much are distinguishable. The *Silberblatt, Industrial Indemnity, Southern Sog,* and *Trans-Bay* cases all found that the district court had jurisdiction to consider unjust enrichment claims against HUD by contractors or subcontractors. *Southern Sog, Inc. v. Roland*, 644 F.2d 376 (5th Cir. 1981); *Industrial Indem., Inc. v. Landrieu*, 615 F.2d 644 (5th Cir. 1980); *S. S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28 (2d Cir. 1979); *Trans-Bay Eng'rs & Builders, Inc. v. Hills*, 551 F.2d 370 (D.C.Cir.1976).

In all four cases, the courts of appeals appear to be stretching to find jurisdiction because HUD controlled actual "hold-back" or escrow

## CONTRACTOR DEFENDANTS UNDER A THEORY OF PENDENT JURISDICTION

▉▉▉ Pendent party jurisdiction has two requirements. First, plaintiffs' claim must be pendent to a substantial federal claim, and second, the claim must arise out of a common nucleus of operative facts. *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (applying *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), test to pendent party situation), *overruled on other grounds Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). I need not reach the second prong of the test because my dismissal of plaintiffs' federal law claims against HUD makes it clear that no substantial federal claim exists. However, were I to reach it, or if plaintiffs elect to proceed under the Tucker Act, I would hold that plaintiffs' claims against the private defendants do not arise from the same nu-

funds to which plaintiffs claimed an entitlement. Moreover, in *Industrial Indemnity, Silberblatt,* and *Trans-Bay*, HUD had by virtue of assignment or foreclosures a more direct obligation to the plaintiff contractors. Therefore, the courts exercising equitable discretion found the need compelling to imply a quasi-contractual remedy. In *Southern Sog* there was no assumption of the mortgage, but there was a $10,000 escrow fund controlled by HUD. In the instant case HUD controls no escrow funds.

The *Southern Sog* court interpreted *Industrial Indemnity* very narrowly in holding that "a federal district court has jurisdiction of a claim by private litigant to a fund retained by the Secretary of HUD, the origin of which was not the public treasury." *Id.* at 379.

To the extent that my view that I would have no § 1331(a) jurisdiction over plaintiffs' unjust enrichment or contract claims; and that there is no need to imply unjust enrichment claims and so expand the limited jurisdiction of the federal courts; are inconsistent with the above-cited cases, I respectfully disagree with those cases. I would choose instead the view of the United States Court of Appeals for the Ninth Circuit, as stated in *Marcus Garvey Square v. Winston Burnett Const.*, 595 F.2d 1126 (9th Cir. 1979), as the more reasonable view. Expanded liability for consequential damages in the absence of a HUD ownership of a project or actual control of an existing fund would be inconsistent with the statutory purpose of the National Housing Act.

cleus of operative facts as the HUD claims. Plaintiffs have direct contractual relationships with many of the private defendants. Interpretation of these contracts is an entirely different inquiry than noncontractual or third-party beneficiary-type duties owed by HUD. Therefore, all of plaintiffs' claims against Barsky, Miller, the Joint Venture, Paul Restall, Revere House, and vantage will be dismissed without prejudice for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Plaintiffs have an adequate remedy against all private defendants in state court. Plaintiffs' primary debtors, if any, are the general contractor and any parties with whom they were in privity of contract. Since there are many solvent parties among these primary obligors, it is unlikely that plaintiff will need to pursue the mortgage insurer HUD, which has at best a very tenuous secondary liability to these plaintiffs.

### 2. BANCO, TITLE AND MILLER DISMISSED *SUA SPONTE*

 Although escrow agent Miller did not move for dismissal of plaintiffs' claims against him, these claims are dismissed for lack of subject matter jurisdiction because his citizenship is not diverse from that of plaintiffs and there is no federal question jurisdiction. In addition, plaintiffs plead diversity jurisdiction against defendants Banco and Title. While it is true that defendants Banco and Title are or appear to be of diverse citizenship from all plaintiffs, 28 U.S.C. § 1332(a) requires complete diversity of all plaintiffs and all defendants, which is not present here. Therefore, plaintiffs' claims against Banco and Title are dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction based either on a federal question or complete diversity of citizenship.[7]

### IV. *CONCLUSION*

 As must be clear from the above opinion, plaintiffs' case is essentially a contract dispute among a number of private parties. These private parties interacted with HUD in part pursuant to HUD's objectives under the National Housing Act, but these interactions had little to do with the private defendants' possible liability to plaintiffs. The fact that HUD was involved in the same project as plaintiffs does not create any statutory duty by HUD to plaintiffs. HUD's mission is to help promote low income housing construction by insuring loans to builders and owners of worthy projects. The National Housing Act is not designed to guarantee that subcontractors receive payment on HUD-insured projects. *Marcus Garvey Square v. Winston Burnett Const.*, 595 F.2d 1126, 1130 (9th Cir. 1979) and cases cited therein. *Cf. United States v. Neustadt*, 366 U.S. 696, 709, 81 S.Ct. 1294, 1301–02, 6 L.Ed.2d 614 (1961) (National Housing Act not intended to provide warranty of value of home to purchaser). Subcontractors are not entitled to rely on HUD's duties under the National Housing Act to guarantee payment. At most, plaintiffs have a third-party beneficiary contract claim against HUD and a state court contract action against the private defendants.

---

**7.** Incomplete diversity could be cured by refiling against defendants Banco and Title only, in light of my dismissal without prejudice of plaintiffs' claims against them. However, Banco and Title can be properly served in the state court proceeding, and I believe that any rights plaintiffs may have against them are more properly and expeditiously pursued there.