**TAYLOR WOODROW BLITMAN CONSTRUCTION CORPORATION, Plaintiff,**

v.

**SOUTHFIELD GARDENS COMPANY, et al., Defendants.**

Civ. A. No. 75–3895–N.

United States District Court, D. Massachusetts.

Feb. 22, 1982.

---

Harold Stahler, Guterman, Horvitz, Rubin & Rudman, Boston, Mass., for plaintiff.

William E. Hughes, Asst. U. S. Atty., John T. Daley, Dane, Howe & Brown, and Snyder, Tepper & Berlin, Steven J. Comen, Herman Snyder, Boston, Mass., for defendants.

Allen B. Schwartz, Boston, Mass., for defendants Allen and Louis Schwartz.

Douglas G. Moxham, Hale & Dorr, Boston, Mass., for Walter K. Winchester.

John Carberry, Albert Cullen, Nesson & Csaplar, Boston, Mass., for defendant Mass. Housing Finance Agency.

## MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

DAVID S. NELSON, District Judge.

This action arises out of the construction of a § 236 low income housing project. Two contracts were involved. A construction contract between the owner of the housing project (Southfield) and Taylor

Woodrow Blitman Construction Corporation (plaintiff) for construction of the housing project, and a building loan agreement between the owner and a state financing agency (MHFA) for financing the construction of the housing project. As a result of the default of the owner in its payments to the plaintiff for the work performed in constructing the project, plaintiff seeks to recover certain monies from the Department of Housing and Urban Development (HUD), the assignee of MHFA under the building loan agreement. As the basis for recovering against HUD, plaintiff asserts claims of third party beneficiary and unjust enrichment. Both plaintiff and HUD have moved for summary judgment.

## STATEMENT OF FACTS

The facts of this case are typical of housing construction ventures undertaken under § 236 of the National Housing Act (12 U.S.C. § 1715z–1).[1] On December 23, 1970, three agreements were made. Plaintiff entered into a joint venture agreement with South Construction Company (South) under which the two companies would serve as general contractor for the Southfield Gardens housing project.[2] At the same time, the joint venture of plaintiff and South (known as Taylor-South) entered into a construction contract with Southfield Gardens, (Southfield) the owner of the project, to construct the housing project on Southfield's property. Finally, Southfield entered into a building loan agreement with the Massachusetts Housing Finance Agency (MHFA), in which MHFA agreed to finance Southfield's project in exchange for a note and mortgage on the project. Under the construction contract, Southfield was to make monthly payments as the work progressed, less a 10% retainage. A parallel provision in the building loan agreement between Southfield and MHFA provided that MHFA would provide monthly advance to Southfield less a 10% retainage, so that it could pay the contractor.[3]

Construction began on the project on the same day that the agreements were executed. On June 12, 1972, HUD certified that the project was substantially completed. At that time, MHFA still possessed a 5% retainage under the building loan agreement which amounted to $189,046.[4] On February 1, 1974, Southfield defaulted on the loan by failing to make an interest payment.[5] MHFA assigned the mortgage and note to HUD on November 17, 1975, and HUD paid MHFA $4,770,860.03 in insurance benefits. In making the insurance payment, HUD reduced the amount of insurance benefits paid to MHFA by $189,046, the amount which was retained by MHFA. In assuming the note and mortgage, HUD succeeded to the rights and obligations of MHFA. Plaintiff seeks to recover from HUD the $189,046 which MHFA had retained under the building loan agreement.

## PLAINTIFF'S CLAIM FOR RELIEF

There is no direct contract between plaintiff and HUD which would make HUD liable to plaintiff for the retained funds which plaintiff seeks in this action. However, plaintiff contends that it is entitled to the funds under two theories. First, it contends that it is a third party beneficiary of the building and loan agreement between Southfield and MHFA, and second, that it is entitled to an equitable lien on the retained funds on the theory that HUD has been unjustly enriched. HUD, in response,

**1.** For a detailed discussion of the statutory scheme and purposes of § 236, *see S. S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 31–2 (2d Cir. 1979).

**2.** Under the joint venture agreement, South was not required to perform any construction work, and it agreed to make no claims for the construction proceeds. The joint venture agreement was executed because it was necessary to create an identity of interest between the owner and the contractor in order to qualify for certain benefits under the program.

**3.** HUD had previously agreed to insure MHFA against any default in the note and mortgage up to 90% of the certified cost of construction.

**4.** The original 10% retainage was reduced to 5% by agreement of the parties.

**5.** It appears from the record that mortgage payments were not paid for some period of time, but that they have recently been resumed to some extent.

mounts a multi-pronged attack on plaintiff's assertions, contending that (1) plaintiff is precluded from bringing the suit because the court lacks jurisdiction, (2) plaintiff has an adequate remedy at law, (3) plaintiff's third party beneficiary claim fails because (a) plaintiff is not a third party beneficiary of the building loan agreement (b) even if plaintiff is a third party beneficiary, HUD has a defense against Southfield which is applicable to plaintiff, and (4) plaintiff's unjust enrichment/equitable lien theory fails because (a) plaintiff is not a non-profit corporation (b) plaintiff has unclean hands (c) there is no unjust enrichment to HUD and (d) there is no res which can be the subject of an equitable lien.

I find that this court does have jurisdiction to hear this case, but that plaintiff is not entitled to recover against HUD on either a third party beneficiary claim or on the basis of unjust enrichment.

## DISCUSSION OF THE LAW

### The Jurisdictional Question

■ Defendant relies on *Marcus Garvey Square, Inc. v. Winston Burnett Construction Co.*, 595 F.2d 1126 (9th Cir. 1977) as the basis for its claim that this court does not have jurisdiction to hear this case. *Marcus Garvey* involved a similar suit on a § 236 housing project. The court in that case found no jurisdiction because the suit was against the United States and it had not waived its immunity, and there was no res in HUD's possession on which to base a recovery. The short answer to this argument is that the First Circuit has specifically disagreed with *Marcus Garvey* and has determined that this court does have jurisdiction in this type of case. *See Armor Elevator Co., Inc. v. Phoenix Urban Corporation*, 655 F.2d 19, 20–1 (1st Cir. 1981); *see also S. S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 35–6 (2d Cir. 1979); *Industrial Indemnity, Inc. v. Landreau*, 615 F.2d 644, 645–6 (5th Cir. 1980).

### Third Party Beneficiary Claim

■ It is well established under federal common law that one who is not a party to a contract may nevertheless have enforceable claims under the contract if the contract was made for his direct benefit.[6] See *Holbrook v. Pitt*, 643 F.2d 1261, 1270 (7th Cir. 1981) and cases cited therein. However, if the agreement was not intended to benefit the third party, he is an "incidental" beneficiary with no enforceable rights. *Id.* As the First Circuit has stated

In deciding whether a nonparty should have a remedy for breach of contract, a court should ask whether the character of the benefit that will result to the putative third party beneficiary is such that his expectations of a pecuniary benefit are reasonable and whether enforcement by him will produce the result intended by the promisee at the least cost to society. *Pstragowski v. Metropolitan Life Ins. Co.*, 553 F.2d 1, 5 (1st Cir. 1977).

■ In order to hold the promisee accountable, there must be a legally binding promise for the third party's benefit. *Cf. Aetna Casualty and Surety Co. v. United States*, 655 F.2d 1047, 1055 (Ct.Cl.1981). For if there is no promise by which the promisee intends to be bound, it is unreasonable for the third party to rely on it. *See* Restatement of Contracts 2d § 302, and compare § 302 Illus. 11 at 443 with Illus. 19 at 444.

■ In this case, plaintiff claims to be the beneficiary of the building loan agreement between the owner (Southfield) and the lender (MHFA). However, an analysis of the building loan agreement indicates that plaintiff was unreasonable in relying on it for recovery against the lender.

The agreement first addresses the issue of payment as follows:

the balance due the Borrower hereunder shall be payable at such time after completion as the commissioner authorizes the release of the holdback. However,

---

**6.** I find that federal common law applies to plaintiff's third party beneficiary claim. *See Holbrook v. Pitt*, 643 F.2d at 1270, *Trans-Bay*

*Engineers and Builders, Inc. v. Hills*, 551 F.2d 370, 377 (D.C.Cir.1976).

the Lender *may* withhold final payment until after the expiration of any period which mechanics and materialmen may have for filing liens. (emphasis added). Building loan agreement para. 4(b).

The plaintiff contractor cannot look to this section for recovery on a third party claim. First, there is no promise by the owner to pay the contractor. Rather, there is simply an option given to the lender (MHFA) to withhold the final payment until the mechanics and materialmen have been paid. Apart from this problem, however, the "agreement" was simply not made for plaintiff's benefit. The clause refers to mechanics and materialmen, those laborers and suppliers who worked for plaintiff, and not plaintiff itself.

Paragraph 6 provides

Before any advance hereunder, the Lender *may* require the Borrower to obtain from the contractor and all subcontractors and materialmen dealing directly with the principal contractor acknowledgments of payment and releases of liens down to the date covered by the last advance, and concurrent with the final payment for the entire project. (emphasis added).

Again there is no binding commitment by any party to insure payment to the contractor. Rather, there is a nonbinding option given to the lender to require acknowledgments of payments and releases of liens prior to the final payment. Since there is no legally enforceable promise for his benefit, the contractor could not have reasonably relied on this as a basis to expect either party to pay him in event of the owner's default. Plaintiff cannot, therefore, assert a third party beneficiary claim with respect to paragraph 6 of the contract.

The last paragraph on which plaintiff might have relied is 14(a) which provides

The Borrower shall, as a condition precedent to any advance hereunder, submit to the Lender ... (ii) with the final application for advance, certifications ... that the project has been fully constructed in accordance with the provisions of this agreement and that all laborers and mechanics employed in the construction of the completed project have been paid not less than the said prevailing wage rates.

Under this paragraph the borrower (Southfield) was required to do two things prior to receiving any advancement of money under the contract (1) certify that the laborers and mechanics had been paid not less than the prevailing wage rates, and (2) certify that the project was fully constructed according to the terms of the agreement. Plaintiff clearly could not rely on the first promise, since it concerned only laborers and mechanics and related to wage rates. Neither could plaintiff rely on the second promise which concerned the proper construction of the project, rather than payment to the contractor. This is made clear by a review of surety bond cases, which address a problem similar to that presented in this case.

In surety bond cases, the owner contracts with the building contractor for the construction of a building. As a condition of the construction contract between the owner and contractor, the owner requires the contractor to obtain a surety bond.[7] There are two kinds of surety bonds, performance bonds and payment bonds.[8] A performance bond simply insures that the contractor will perform the work as contracted. The agreement in this case in which the borrower, Southfield, promised to certify the construction of the project, is analogous to a performance bond. A payment bond, on the other hand, requires that the contractor pay all subcontractors and materialmen before the owner will make final payment.[9]

---

7. The contract between the owner and contractor in the surety bond case is analogous to that between the owner and lender in this case.

8. Performance and payment bonds are sometimes combined into a single performance-payment bond.

9. The clearest situation in which subcontractor and materialmen have a right of action on a surety bond is where the bond specifically grants that right of action. *See Frigidaire Sales Corp. v. Maguire Homes, Inc.*, 186 F.Supp. 767, 768 (D.Mass.1959).

Where the contractor (or owner) defaults on payments to the subcontractors and materialmen, the issue arises as to whether they are third party beneficiaries of the surety bond. As to performance bonds, it is generally held that subcontractors and materialmen are not third party beneficiaries. This follows from basic third party beneficiary theory that the parties to the agreement must have intended to benefit the third party. *See* J. Calamari and J. Perillo, The Law of Contracts (2d ed. 1977) at 621. *Socony-Vacuum Oil Co. v. Continental Casualty Co.*, 219 F.2d 645, 647 (2d Cir. 1955); *Smith-Kelly Supply Co., Inc. v. General Construction Corp.*, 399 F.Supp. 184, 185 (S.D.Ala.1975). Restatement (Second) of Contracts § 133, ill. 11. The agreement of the contractor assuring the owner that he will perform does not indicate an intention to benefit subcontractors and materialmen. See *Smith-Kelly Supply, supra*, 399 F.Supp. at 185. *But see Amelco Window Corp. v. Federal Ins. Co.*, 127 N.J.Super. 342, 317 A.2d 398, 401 (1974); Corbin on Contracts, 798 at 25 (1980 Supp.).[10] In the case of a payment bond, the intent of the owner is, presumably, to protect himself against the filing of mechanics liens against his property, not to benefit subcontractors and materialmen. The law of Contracts, *supra*, at 622. However, recently courts have begun to hold that the intent of the owner is, at least in part, to benefit the subcontractors and materialmen, and these workers have come to rely upon payment bonds in accepting work. Corbin on Contracts, at § 798 at 27.[11] Since this provision in the agreement between Southfield and MHFA which related to the plaintiff cannot assert a third party beneficiary claim.

Despite the fact that plaintiff does not appear to be entitled to assert a claim based upon a third party beneficiary theory, plaintiff asserts that he is entitled to assert such a claim under the decision in *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370 (D.C.Cir.1976). However, *Trans-Bay* does not articulate its basis for finding a third party beneficiary contract, but merely cites three cases, which presumably, support that proposition: *Travelers Indemnity Co. v. First National Bank of New Jersey*, 328 F.Supp. 208, 211 (D.N.J.1971); *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.*, 407 F.Supp. 164, 180–3 (D.V.I. 1975), and *Avco Delta Corp. Canada Ltd. v. United States*, 484 F.2d 692, 701–4 (7th Cir. 1973), cert. denied, 415 U.S. 931 (1974). *Avco Delta* is clearly distinguishable from this case.[12] *Avco Delta* concerned the con-

---

10. *See* Corbin on Contracts, § 798 at 25–28 (1980 Supp.), stressing the need to properly distinguish performance and payment bonds, and suggesting that it is improper to allow subcontractors to assert third party beneficiary claims on performance bonds.

11. Even where there is a payment bond, the question remains as to exactly what was promised by the parties to the contract. If, for example, the agreement was to pay the contractor, but not subcontractors and materialmen, the contractor would be a third party beneficiary but the subcontractors and materialmen would not. Corbin on Contracts, *supra*, § 798. In this case, the laborers and mechanics are third party beneficiaries of the contract in that it guaranteed them the prevailing wage rate. The contractor is not a third party beneficiary.

12. In *Travelers*, the court's entire reasoning was as follows: "This Court deems the plaintiffs to be creditor third party beneficiaries of the building loan agreement ... the various pertinent statutes, regulations and agreements set up an elaborate system enabling the mort-

gagee to retain a portion of the funds payable under the building and loan agreement to insure the mortgagor's performance of his obligation to erect the project; upon completion of the project the disposal of the funds is also provided for." 328 F.Supp. at 211. In *American Fidelity*, HUD accepted the plaintiff's characterization of itself as a third party beneficiary, so the issue was not addressed. 407 F.Supp. at 180–1. Other cases which have found a third party beneficiary contract claim in these circumstances also fail to articulate the legal basis for their holding. *See Bennett Construction Co., Inc. v. Allen Gardens, Inc.*, 433 F.Supp. 825, 832 (W.D.Mo.1977); and *United States v. Mill Assoc. Inc.*, 480 F.Supp. 3, 7 (E.D.N.Y.1979) (both simply citing *Trans-Bay*) and *Spring Construction Co. v. Harris*, 562 F.2d 933, 935 (4th Cir. 1977) (As in *American Fidelity*, HUD simply accepted plaintiff's characterization of itself as a third party beneficiary). The most recent case to address the contractual situation found in this case did not reach the third party beneficiary issue. *S. S. Silberblatt, supra*, 608 F.2d at 36.

tractual relationship between the owner, contractor and subcontractor of a building project. The construction contract between the owner and contractor provided for payment to the contractor less a retainage to be held by the owner. The contractor agreed to pay all subcontractors regardless of whether they could file liens against the property. The contractor was specifically authorized to use the retainage to pay the subcontractors. The owner agreed to pay the retainage to the contractor, but this payment was conditioned on the contractor having paid the subcontractors. The court held that the subcontractors were third party beneficiaries of the agreement between the owner and contractor, and could assert a claim against the amount retained by the owner. In *Avco Delta*, unlike this case, there was a specific enforceable promise made with respect to the payment of the subcontractors and the use of the retainage to secure the payment. It is clear that the parties intended to confer a benefit on the subcontractors, and that the subcontractors were reasonable in relying on the agreement in looking to the retainage for payment. Thus, it was proper to find that the subcontractors were third party beneficiaries in these circumstances.

This view is buttressed by other cases involving similar circumstances. *Holbrook v. Pitt*, 643 F.2d 1261 (Ct.Cl.1981), involved a third party beneficiary claim by tenants of a low income housing project, which was administered under § 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f. Under § 8, the owner of a housing project certifies a list of eligible tenants to HUD, and HUD makes housing assistance payments to the owners on behalf of the tenants. In *Holbrook*, the owner delayed the certification, and HUD refused to pay the benefits. The tenants sued for the benefits, claiming that they were third party beneficiaries of the contract between the owner of the project and HUD. In holding that the tenants were third party benefici-

aries, the court noted that the intent to benefit the tenants pervaded the statutory scheme, as well as the rent subsidy contract in which HUD specifically agreed to make housing assistance payments on behalf of the tenants. *Id.* at 1272.

*International Paper Co. v. Whitson*, 571 F.2d 1133 (10th Cir. 1977) involved a suit by a materialman to recover for materials supplied a contractor on a HUD insured housing project. Unlike this case, however, the agreements included not only a building loan agreement but also a completion assurance agreement by which the contractor established a fund for the payment of his obligations. When the contractor-owner defaulted and the lending bank assigned its interest, including the completion assurance fund to HUD, a materialman sued HUD claiming to be the third party beneficiary of the completion assurance agreement. The court held that the materialman was entitled to recover. It found an intent to benefit the materialman in that in the assurance agreement, the contractor agreed to perform its obligations under the construction contract, and the construction contract specifically provided that the contractor would pay for all labor and materials. *Id.* at 1137.[13]

No where in this case is there such a clear intent to benefit the third party as there was in *Holbrook* and *International Paper. See Berks Products Corp. v. Landreau*, 523 F.Supp. 304, 310 (E.D.Pa.1981) (The court held in a suit similar to this case, that nothing in the National Housing Act or its Regulations indicated any duty owed by HUD to contractors or subcontractors.). Plaintiff could not reasonably have relied upon the contract between Southfield and MHFA as creating an interest in the retainage for its benefit. I, therefore, find that plaintiff cannot assert a third party beneficiary claim in the retainage at issue.

*The Unjust Enrichment Claim*

Plaintiff next argues that it is entitled to recover the retainage in HUD's pos-

---

**13.** Although the court in *International Paper* based its decision on Oklahoma law, the law of Oklahoma and federal common law appear to be the same. In any event, I would find the

same result as reached by the court in *International Paper* if federal law had been applicable in that case.

session on the theory that HUD has been unjustly enriched by plaintiff's performance. As support for its argument, plaintiff relies on *Trans-Bay, Silberblatt* and other cases which have found unjust enrichment in suits concerning the same issue. I agree with the parties that the issue, if not its resolution, may be simply stated. In every case in which the court has found unjust enrichment, the owner of the project was an assetless, non-profit corporation. In this case, the owner, Southfield, is not an assetless, non-profit corporation, but one which is, presumably, credit-worthy. The issue is whether the credit-worthy nature of Southfield should preclude recovery on the claim for unjust enrichment in this case. Plaintiff, naturally, argues that it should not, and relies on language in the cases which emphasizes HUD's total control of the transaction. HUD, on the other hand, contends that unjust enrichment is precluded here citing the court's emphasis on the non-profit nature of the owners. HUD also asserts that plaintiff is not entitled to recover on an unjust enrichment theory because it has an adequate remedy at law. I find that plaintiff has an adequate remedy at law which precludes recovery on an unjust enrichment basis. I also find that, apart from plaintiff's adequate remedy at law, the credit-worthy nature of Southfield precludes recovery based on unjust enrichment.[14]

■ The doctrine of unjust enrichment is equitable in nature and correspondingly broad. Unjust enrichment has been defined as "the retention of money or property of another against the fundamental principles of justice or equity and good conscience." 66 Am.Jur.2d Restitution and Implied Contracts § 3 p. 945. Typically, unjust enrichment involves a direct benefit conferred on one party by another.[15] It is also recognized where a third person benefits from a

contract between two others, as is alleged in this case. However, such a situation exists, and one of the contracting parties defaults, the other party does not automatically have an unjust enrichment claim against the third party. *Id.* at § 16 n. 90. More than a benefit to the third party is necessary. There remains the question of whether, under all of the circumstances, justice requires making the third party pay. As the court in *Silberblatt* stated

> To sustain a claim of unjust enrichment a plaintiff must show that the defendant has at the plaintiff's expense been enriched *and unjustly so*, such as when the defendant receives requested goods or services without paying any compensation therefore. *See* Palmer, I *Law of Restitution*, § 1.7 at 42 (1978); *Restatement of Restitution*, § 1 (1937). (emphasis added).

Although there is some disagreement as to whether HUD benefited from plaintiff's performance, I assume that a benefit can be shown. *Compare Trans-Bay* at 551 F.2d 381–2 at 311 (no benefit to HUD).

■ Before reaching the issue of whether HUD has been unjustly enriched, however, it is necessary to consider whether plaintiff has an adequate remedy at law. Where plaintiff has an adequate remedy at law, equity will not consider a claim for unjust enrichment. *Austin v. North American Forest Products*, 656 F.2d 1076, 1087–8 (5th Cir. 1981); *Berks Products, supra*, 523 F.Supp. at 312 n. 6 (involving a similar case against HUD); *Visor Builders, Inc. v. Devon E. Tranter, Inc.*, 470 F.Supp. 911, 924 (M.D.Pa.1978). Here, plaintiff has made no showing that its remedy at law against Southfield based upon the construction contract is inadequate. I therefore find that plaintiff cannot assert a claim for unjust enrichment.[16]

---

**14.** The issue of unjust enrichment is governed by federal common law. *See Silberblatt, supra*, 608 F.2d at 41.

**15.** For example, where a contractor builds an addition onto the owner's home, and no contract exists, the court may find that the owner

is unjustly enriched by the value of the addition.

**16.** The other cases which upheld recovery on an unjust enrichment (e.g. *Trans-Bay* and *Silberblatt*) did not specifically address the issue of adequate remedy at law, presumably because it was self-evident that plaintiffs had no

Apart from this, however, I find that HUD was not unjustly enriched. As noted above, "enrichment" alone is not dispositive. It must also be shown that the enrichment is "unjust" or that equity requires payment for the benefit received. In all of the cases in which courts have found that HUD was unjustly enriched, the non-profit, assetless status of the owner was the crucial factor. The two main cases in this area, *Trans-Bay* and *Silberblatt*, make this clear. As the court in *Trans-Bay* stated

> It is neither fair nor realistic to treat HUD as a mere mortgage insurer in this transaction, defining its exposure solely on the basis of the mortgage insurance document. This was not a typical marketplace transaction where the contractor relied on the reputation and financial integrity of the owner to pay the construction costs. *The owner here was a non-profit community based organization without any significant assets*, a fact known to all parties. 'These non-profit, no-asset corporations were creatures of HUD.' They are not ordinary private commercial ventures, but products of and means for government programs. They were created and fully financed to carry out a government inspired social purpose of rehabilitating and constructing housing for low income families. The mortgage company was fully insured on its loan by HUD. HUD had the remedy of foreclosure. The owner's losses were limited to the project itself—which was 100% financed including seed money. Under HUD's view, *the contractor* alone is not protected, and *is indeed even unable to consider the mechanic's lien available in ordinary commerce. Trans-Bay,* 551 F.2d at 381–382 (emphasis added).

The Court emphasized that the owner in *Trans-Bay* was without any significant as-

sets because (1) it was non-profit and possessed no assets independent of the housing project and (2) the contractor had waived its right to filing any liens or maintaining any claims against the housing project. Thus, there was nothing on which the contractor could sue the owner.

As in *Trans-Bay*, the court in *Silberblatt* emphasized the fact that the owner was an assetless "robot" of HUD, and that the contractor could not even file a lien against the property.[17] In one passage, the court succinctly summed this up: "As a result of *the combination of the owners financial impecunity and the contractual bar against filing liens on the property*, the contractor looks only to the mortgage proceeds for payment for the materials and services he provides." *Silberblatt* at 33. Since HUD possessed those mortgage proceeds as a result of the assignment from the state finance agency, it was only fair to allow the contractor to proceed against them. In this case, however, neither of the bars to recovery exist. The owner is not an assetless, non-profit corporation, but a presumptively credit-worthy one. Further, the contractor is not precluded from filing a lien against the owner's property. Plaintiff's argument that "as in *Trans-Bay* [plaintiff], as general contractor is denied the traditional contractor's remedy of the right to lien the project under the Mechanic's Lien Statute in accordance with the HUD contract forms which it was obliged to sign" is belied by the construction contract itself. Article 7 of the construction contract, "Waiver of Lien or Claim," states that "The Contractor shall file no mechanic's or materialman's lien or maintain any claim against the Owner's real estate or improvements for or on account of any work done, labor performed or materials furnished under this contract, *except for non-payment*." (emphasis add-

---

remedy against the assetless, non-profit owners.

**17.** As the Court in *Silberblatt* stated: "This issue, which is the nub of the case before us, has in the past been resolved in favor of the contractor. *Trans-Bay* and *Eversley* [*F. W. Eversley & Co. v. East New York Non-Profit H. D. F. C., Inc.,* 409 F.Supp. 791 (S.D.N.Y.1976)]

stand for the proposition that HUD cannot avoid paying for a benefit received by it as the real party in interest by maintaining a formal distinction between itself and its robot, the project owner who is the nominal party to the contract with the contractor, and by inserting a no-lien clause into the contract form prepared by HUD . . ." 608 F.2d at 40.

ed). Non-payment is precisely the basis for the action here.[18]

Since none of the reasons for requiring a finding of unjust enrichment exist in this case, I find that plaintiff's unjust enrichment claim must fail.

Plaintiff's motion for summary judgment against HUD is denied. HUD's motion for summary judgment against plaintiff is allowed, and judgment shall enter accordingly.

18. Compare Article 7 of the construction contract in *Trans-Bay*, which states: "The Contractor shall file no mechanic's lien or maintain any claim against the Owner's real estate or improvements for or on account of any work done, labor performed or materials furnished under the Contract." 551 F.2d at 382.