Brassard, J.
Plaintiff Commonwealth of Massachusetts (“Commonwealth”) originally brought this action against TLT Construction Corp. (“TLT”) and other defendants.[1] The Commonwealth alleges that defendants’ negligent waterproofing of the exterior of the Suffolk County Courthouse (“Courthouse”) with a substance known as Duramem damaged the Commonwealth’s property and resulted in interruption to its business. As part of its damages, the Commonwealth seeks reimbursement for expenses under its Authorized Absence Program (“AAP”), which paid full wages to employees who were too incapacitated by Duramem fumes to report to work. TLT now moves for partial summary judgment contending that it is not liable to the Commonwealth for AAP payments.
TLT argues that, as a matter of law, the Commonwealth is not entitled to reimbursement for AAP payments because 1) the relationship between the Commonwealth and TLT as to AAP payments is too remote to create tort liability, 2) AAP payments were voluntary, and 3) AAP payments are duplicative of employee claims for impaired earning capacity in a separate action against this defendant.[2] The Commonwealth responds that it is entitled to recover its AAP expenditures because the claimed pecuniary losses are derived from direct physical harm to property owned by the Commonwealth and because the claim is for damage to the Commonwealth’s property and resulting business interruption rather than for impairment of its employees’ capacity to work.
For the reasons set forth below, the motion of TLT for partial summary judgment is DENIED.
BACKGROUND
Viewed in the light most favorable to the nonmoving party, the Commonwealth, the following facts are undisputed.
In December 1992, the Commonwealth contracted with TLT to renovate the exterior of the Courthouse, which the Commonwealth owns. The Office of the Chief Administrative Justice (“CAJ”) administers the Courthouse for the Commonwealth.
TLT began construction in February 1993. During the renovations, in an effort to waterproof the Courthouse, TLT’s subcontractors applied Duramem to the exterior of the building.[3] When several Courthouse employees complained that fumes from Duramem were making them ill, application of Duramem was halted. The Commonwealth vacated certain portions of the Courthouse, provided additional ventilation, and relocated certain offices outside the Courthouse.
On June 23, 1994, the City of Boston Department of Health and Hospitals notified the office of the CAJ *214 that Duramem presented a health risk to the occupants of the Courthouse.[4]
On July 7, 1994, CAJ Fenton implemented the AAP, authorizing the chief justices of the superior, housing, juvenile, and Boston municipal courts to “send employees home who are incapacitated due to the effects from the application of waterproofing material to the exterior of the New Suffolk County Courthouse.” The AAP allowed employees who claimed to be sickened by the Duramem fumes to take fully compensated sick leave, which was not deducted from preexisting accumulated sick time and vacation time. As part of its damages, the Commonwealth seeks to recover the approximately $700,000 expended on AAP payments. In the instant motion, TLT requests summary judgment on that portion of the Commonwealth’s claim that seeks reimbursement of AAP payments.
DISCUSSION
Summary judgment shall be granted where there are no issues of material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17. In this case, TLT has failed to demonstrate the absence of a triable issue of fact.
I. Remoteness
A tort to the person or property of one person does not make the tortfeasor liable to a third party who has a private agreement with the injured party when that agreement is unknown to the doer of the wrong. See Chelsea Moving and Trucking Co. v. Ross Towboat Co., 280 Mass. 285, 287 (1932). In Chelsea, the Court declined to find a tortfeasor liable for reimbursing an employer’s payments to an injured employee because the private agreement between the employee and the employer “did not arise from any relation between the plaintiff [employer] and the defendant [tortfeasor].” Id. at 285.
TLT argues that, under Chelsea, it may not be held liable for the Commonwealth’s private agreement to provide AAP payments to certain Courthouse employees. TLT contends that because the agreement was private, and was implemented after the alleged tort occurred, the agreement is “too remote and indirect” to be considered a natural result of the alleged negligence by TLT. Id. at 287.
Here, unlike the parties in Chelsea, the Commonwealth had a contractual agreement with TLT to resurface the Courthouse building, and the alleged injuries resulted from activities performed under that contract. Under these circumstances, a factfinder could determine that the contract between TLT and the Commonwealth created the relationship between the employer and the tortfeasor that was lacking in Chelsea, supra. TLT is not entitled to judgment as a matter of law. There is, rather, a genuine issue of material fact as to whether the Commonwealth is entitled to recover AAP payments from TLT as a direct and foreseeable consequence of TLTs alleged negligence in resurfacing the building.
II. Economic Loss Doctrine and Business Interruption
The economic loss doctrine bars a plaintiff from recovering losses resulting from business interruption when the damage to plaintiff is solely monetary and there is no accompanying physical harm to the plaintiffs person or property. See FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993); Stop & Shop Cos. v. Fisher, 387 Mass. 889, 893-94 (1983). A plaintiff is, however, entitled to recover losses resulting from business interruption when that interruption is a foreseeable result of physical harm to the plaintiffs person or property caused by the negligence of the defendant. See Newlin v. New England Tele. Co., 316 Mass. 234, 237-38 (1944); Priority Finishing Corp. v. LAL Constr. Co., 40 Mass.App.Ct. 719, 720-21 (1996).
In this case, TLTs actions resulted in physical harm to the Courthouse. The application of Duramem to the exterior of the building, and the subsequent physical illness of certain employees, rendered certain parts of the Courthouse unusable for periods of time. The Commonwealth maintains that it was forced to take measures in response to this business interruption. The Commonwealth relocated entire offices for extended periods of time in temporarily-leased space.
In addition, the Commonwealth instituted the AAP to compensate fully Courthouse employees who were unable to work as a result of the physical harm to the building. Employees receiving workers’ compensation receive a maximum of 60 percent of their weekly earnings while they are unable to work. G.L.c. 152, §34 (1996 Ed.). The Commonwealth argues that because it was concerned with the health, financial situation, and morale of its employees, it voluntarily instituted the AAP so that its affected employees would receive 100 percent of their earnings while they were unable to report to work because of Duramem fumes.
The economic loss doctrine does not bar recovery in this case because the loss incurred by the Commonwealth resulted from physical damage to its property. See FMR Corp., 415 Mass. at 395; Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 304-06 (1993); Stop & Shop Cos., 387 Mass. at 893-94. Whether the Commonwealth’s institution of the AAP was a reasonable response to the interruption of its business is a *215 question of fact, not of law. Thus, TLT is not entitled to summary judgment.
III. Workers’ Compensation
TLT also argues that it is protected against third-party tort liability by the Workers’ Compensation Act (“the Act”). The Act ensures that employees who give up their rights to sue in tort may recover from their employer medical expenses and a portion of lost wages resulting from work-related injuries, regardless of foreseeability or fault on the part of the employer. See Neff v. Commissioner of the Dep’t of Indus. Accidents, 421 Mass. 70, 75 (1995); Murphy v. Commissioner of the Dep’t of Indus. Accidents, 415 Mass. 218, 222 (1993). The Act does not, however, protect alleged third-party tortfeasors against negligence claims. Where a third party causes injury to an employee, and the employee has recovered under the Act, either the employer or the employee may bring a suit in damages resulting from the negligence of the third party. G.L.c. 152, §15 (1996 Ed.).
The Act requires that an employer provide benefits when an employee files a valid written claim. G.L.c. 152, §41 (1996 Ed.). It does not, however, prohibit a self-insured employer from voluntarily providing its employees with other compensation when the employee does not file a claim, nor does it prohibit an employer from supplementing benefits received under the Act with further compensation.
In this case, the Commonwealth, a self-insurer under the Act, compensated its employees under both the mandatory requirements of the Act and its own voluntary payment scheme (the AAP). No employee received compensation under both schemes simultaneously, although some received compensation under each sequentially.[5] The reasonableness of the Commonwealth’s voluntary decision to provide full compensation to its employees under the AAP is not a question of law, but a question of material fact.
IV. Duplicative Payments
The Act does, however, protect a third-party tort-feasor against duplicative claims. The Act provides that “either the employee or insurer” may proceed to enforce the liability of a third person who caused the injury. G.L.c. 152, §15. TLT argues that the Commonwealth’s claim for reimbursement of AAP payments constitutes an “end run” around G.L.c. 152’s protection against duplicative claims. Specifically, for those employees who have received AAP payments and also brought private suits against TLT, TLT contends that reimbursement of AAP payments to the Commonwealth would duplicate its potential liability to compensate those employees for impaired earning capacity.
The Commonwealth argues, however, that the claims are not duplicative because: 1) AAP-reimbursed wages are different from earning capacity, and 2) the Commonwealth seeks reimbursement of AAP payments as a cost of business interruption and as an attempt to mitigate damages, not as compensation for its workers’ loss of earning capacity.
A. Wages and Impaired Earning Capacity
In a negligence action, compensable injuries include retrospective and prospective impairment of earning capacity. See Adams v. United States, 964 F. Supp. 511, 525 (D.Mass. 1996). Thus, TLT argues that any private settlement agreements or recoveries made by Courthouse employees against TLT will include compensation for loss of earning capacity. TLT reasons that, either because of its potential tort liability to employees after trial, or because it has negotiated a separate agreement with certain employees, the Commonwealth’s claim for reimbursement of AAP payments is barred as duplicative of its employees’ claims against TLT for loss of earning capacity.
Massachusetts courts have declined to find that an employer’s continued payment of wages while an employee is disabled precludes a claim for impaired earning capacity. See Shea v. Rettie, 287 Mass. 454, 457 (1934). Thus, even if a plaintiff in a negligence action has received full pay from an employer for the period of disability, the defendant is nonetheless obligated to compensate the employee for any impairment of earning capacity. Id. “The fact that payments were made by the city does not indicate the extent of the plaintiffs disability or incapacity to labor.” Id.
Where continued payment of wages is unrelated to a determination of the impairment of an employee’s earning capacity, this court cannot conclude, as a matter of law, that AAP payments are duplicative of employee claims for loss of earning capacity. There are several factual questions that must be addressed in determining whether AAP payments are duplicative, including the nature of the particular employee claims and the intended purpose of AAP payments.
First, examination of individual claims may eliminate certain employee categories as non-duplicative. The parties agree that certain employees — those who received approximately $200,000 of AAP payments— have not brought private actions against defendants. In those instances, there is no danger of duplicative payments. Likewise, there is no risk of duplication to the extent that an employee’s claim is for future impairment of earning capacity, because the AAP addressed only an employee’s day-by-day inability to report to work because of the presence of Duramem.
There is a third group of employees, however, who may make a recovery from or settlement agreement with defendants predicated in part on past diminution of earning capacity. For those employees, determination of whether AAP payments are duplicative depends on factual issues that cannot be resolved from the information in the summary judgment record.
Ascertaining the amount of compensation to be awarded for impaired capacity to work “requires, first, *216 the determination of the extent to which such capacity has been diminished and, second, the fixing of the amount of money which will compensate for the determined extent of impairment.” Timmons v. MBTA, 412 Mass. 646, 652 (1992), quoting Shea, 287 Mass. at 456. In this case, there is no information before the court that would permit a determination of how much of an individual employee’s claim was based upon impaired earning capacity, or to what extent a potential verdict or proposed settlement agreement was intended to compensate the employee for impaired earning capacity.
Where there are factual disputes regarding the basis and amount of the impaired earning capacity claims, the court may not decide the duplication of payments issue as a matter of law.
B. AAP Payments as a Cost of Business Interruption and Mitigation
The Commonwealth argues in addition that AAP payments are not duplicative of claims for impaired earning capacity because AAP payments are compensable as a cost of business interruption and as an attempt to mitigate damages. The Commonwealth contends that it is entitled to seek reimbursement for costs incurred by moving employees away from the affected areas of the Courthouse, and that it is therefore entitled to reimbursement of AAP payments as a result of the business interruption caused by the physical harm to the Courthouse resulting from TLTs alleged negligence.
The Commonwealth asserts also that AAP payments represent a valid attempt to mitigate damages by shielding affected employees from further exposure to the fumes. TLT alleges that, because the Commonwealth was wasteful in administering the AAP, and because there were no procedural safeguards in the program, the AAP may not be properly be considered an effort to mitigate damages.
This court concludes that, because some employees were apparently sickened by continued exposure to the fumes from Duramem, the Commonwealth’s efforts to shield affected employees from further harmful exposure to the fumes may constitute a valid attempt at mitigation. “It would be most unjust to impose upon an owner the duty of trying to effect a cure, if that is what ought to be done, and to leave him remediless for expenses so incurred . . .” See Atwood v. Boston Forwarding and Transfer Co., 185 Mass. 557, 559 (1904). The owner is, however, “bound to act in good faith and to exercise a sound discretion so as not to make an unreasonable expenditure ....” Id. Therefore, the question of whether AAP payments constitute a reasonable attempt to mitigate damages requires a factual determination that is not appropriate for summary judgment.
Where there are genuine issues of fact regarding the nature and amount of the workers’ claims for impaired earning capacity, the extent to which AAP payments represented compensable expenses for damage to property and business interruption, and the extent to which AAP payments constituted a reasonable attempt to mitigate damages, TLT is not entitled to judgment as a matter of law.
V. Subrogation
TLT argues that the Commonwealth is barred by the doctrine of subrogation from recovering its AAP payments. Subrogation is an equitable adjustment of rights that operates when a victim of loss is entitled to recover from two sources, one of which bears primary legal responsibility. See Frost v. Porter Leasing Corp., 386 Mass. 425, 426-27 (1982). If the secondary source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the subrogor) against the third, primarily responsible party. Id. at 427. Massachusetts courts have held that the principle of subrogation is inapplicable where, as here, the payor is a volunteer. See Blair v. Claflin, 310 Mass. 186, 191 (1941); Newell v. Hadley, 206 Mass. 335, 342-43 (1910).
In this case, where the Commonwealth was under no obligation to provide AAP payments, there is no question that AAP payments were voluntary. The Commonwealth, however, makes no claim that it is entitled to reimbursement of its AAP costs under the principle of subrogation. While a claim of damages based on subrogation alone might fail because AAP payments were voluntary, that does not preclude the Commonwealth from advancing other claims for relief. See Blair, 310 Mass. at 191; Bartholomew v. Stobbs, 280 Mass. 559, 562 (1932); Newell 206 Mass. at 342. Here, the Commonwealth alleges that it is entitled to reimbursement of its AAP expenses for business interruption resulting from physical harm to the Courthouse caused by the defendant’s alleged negligence.
ORDER
For the foregoing reasons, it is hereby ordered that the defendant’s motion for partial summary judgment is DENIED.

 Architect Dean Tucker Shaw, Inc.; waterproofing consultant Thompson & Lichtner Co., Inc.; and product manufacturer Pecora Corp.

 The Barret-MoeUer action (Middlesex Superior Court Civil Action No. 97-01037) was reported settled on January 11, 1999. However, disagreements between the plaintiffs in that suit and certain of the defendants as to the terms of the settlement have to date prevented consummation of the settlement. One disagreement grows out of the defendants’ concern that they may be liable to the Commonwealth for AAP damages.

 For the purposes of this motion only, TLT accepts as undisputed the Commonwealth’s claim that after application of the Duramem, certain Courthouse employees complained of physical symptoms and illnesses which they attributed to fumes created by the Duramem.

 The notification stated that “an unacceptable number of persons occupying the Courthouse during waterproofing operations with Duramem V-500 . . . exhibit symptoms consistent with exposure to toxic levels of organic solvents, disocynates and polynuclear aromatic hydrocarbons."

 This fact was presented by the Commonwealth at oral argument. It is not, however, included in an affidavit.